8012

FARMER v. SELLERS.

1. ONE APPOINTED DISPENSARY CONSTABLE by the governor over his signature alone is a *de jure* officer without giving a bond.

2. IBID.—SEARCH WARRANT.—Such officer need not be specially appointed by the magistrate issuing a search warrant to execute it, where the warrant directs any officer to make the search.

3. SEARCH WARRANT—ISSUES.—Under the facts in this case and the character of the defendant, whose house was to be searched, it was proper to submit to the jury the issue whether a delay of forty-eight days in executing a search warrant was unreasonable.

4. IBID.—Mentioning by name in a search warrant several different kinds of intoxicants as contained in different receptacles in the premises of the party whose house was to be searched is sufficiently definite for a search warrant for contraband liquors.

5. EVIDENCE.—That the plaintiff was the prosecuting witness of defendant in the murder case could be of no value to defendant here, as it was evident that plaintiff had strong convictions against defendant as she was the wife of the man he had killed.

6. DEFENSE OF HOME.—The portion of the charge here excepted to instructing the jury that it is the duty of the owner of a house to first gently lay hands on an intruder, and if he does not desist then use such force as is necessary to eject him, *held* not prejudicial in view of the whole charge and the facts and issues in the case.

7. CHARGE—THREATS.—REQUEST as to how defendant might act in view of threats by deceased, *held* to be within the rule prohibiting Judges from indicating to juries what force they should give to evidence, and it could not possibly have affected the verdict if given because the proposition therein contained is perfectly obvious to all.

Before SHIPP, J., Richland, October term, 1910. Affirmed.

Action by May W. Farmer, administratrix of James P. Farmer, against Wade H. Sellers. Defendant appeals.

*Messrs. Nelson, Nelson & Gettys* and *Frank G. Tompkins,* for appellant, cite: *That the plaintiff was the prosecuting witness in the murder case was competent because alleged in the answer and to show bias:* 61 S. C. 292; 73 S. C. 386; 74 S. C. 102. *Search warrants should be construed strictly* (109 Mass. 371; 115 Id. 145; 123 Id. 420) *and must be executed within a reasonable time:* 35 Cyc. 1268; 25 Ency. 148; 38 At. 368; 59 Me. 296; 85 Me. 462; 19 How. State Trials 1030; 38 Me. 432; 71 Id. 356; 79 Id. 104; 86 Id. 144. *Whether executed in a reasonable time is a question for the Court:* 42 S. C. 28; 52 S. C. 518; 66 S. C. 224; 68 S. C. 184; 61 S. C. 569. *If warrant was of no force, defendant might resist the entry:* 9 S. C. 309. *Malice must be proved by him who alleges it:* 79 Mo. 544; 29 S. C. 236. *Rights and duties of occupant of house:* 79 S. C. 144.

*Messrs. McDonald & McDonald, J. K. Henry* and *Christie Benet,* contra.

*Messrs. McDonald & McDonald* cite: *Dispensary constables are not required to take the oath and give bond:* 86 S. C. 503. *Necessity of commission:* 1 Cranch 154; 2 N. & McC. 256; 2 Speer. 138; 3 Strob. 92; 8 S. C. 408; 14 S. C. 367; 19 Am. Dec. 63; 86 S. C. 508. *Right of protection under the search warrant:* 1 Cool. on Torts 301; 2 Id. 883-4; 2 McM. 336; 19 S. C. 576; 36 S. C. 493.

*Mr. Benet* cites: *Was the warrant sufficient?* 18 Ency. P. & P. 331; 101 Am. St. R. 331; 3 Strob. 94; 2 Spear 121; 15 S. C. 155; 86 S. C. 503; 36 S. C. 494. *Sellers may have lawfully been arrested without a warrant:* 72 S. C. 109; 70 S. C. 74. *Serving warrant in reasonable time is for jury:* 78 S. C. 79; 88 S. C. 447; 66 S. C. 4.

October 2, 1911.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   On the 22d day of February, 1908, in the city of Columbia, the defendant, Wade H. Sellers, shot to death James P. Farmer.   The plaintiff, May W. Farmer, the widow of James P. Farmer, having administered on his estate, recovered a judgment of $5,000 for the benefit of herself and his children against the defendant under the allegation that the homicide was committed "unlawfully, wilfully, wantonly, recklessly and maliciously."   The defenses set up in the answer were: First, a general denial; second, that the defendant shot Farmer in the protection of his dwelling; third, self-defense; and fourth, that the defendant had been tried for the murder of Farmer and had been acquitted.   The exceptions relate to the second and third defenses.

The material undisputed facts are that early in the morning of February 22, 1908, Farmer went to defendant's dwelling and as a dispensary constable several times demanded admittance for the purpose of searching the house for contraband liquor.   The defendant bolted the doors and refused

to open them.   Farmer called to his assistance policeman
Nettles, who came up in the piazza, and then with a pistol
in one hand forced open the door and was shot to death by
the defendant with a rifle.

The plaintiff introduced evidence tending to prove that
before forcing an entrance Farmer read to defendant a
search warrant issued by Magistrate Fowles on January 4,
1908, authorizing and directing the sheriff or any constable
to search the premises for a lot of contraband liquor, and
that he broke open the door with the warrant in one hand
and his pistol in the other only after solicitation had proved
unavailing.   The plaintiff introduced also documents signed
by the Governor purporting to appoint Farmer a constable
under the dispensary laws of the State.   The defendant tes-
tified that he recognized Farmer as a dispensary constable,
but denied that the search warrant was presented or read to
him.   He testified further that he told Farmer he would be
admitted and could search the house as soon as the women
in the house could dress, so that he could be admitted to
their apartment, and that he shot when Farmer refused to
wait, broke open the door and pointed at him with his pistol.
The substantial issues on the trial were: First, was Farmer
an officer whose authority to execute a search warrant the
defendant was bound to respect, or a mere trespasser?
Second, was Farmer's entrance into defendant's house
under a search warrant which defendant was bound to
respect, or was the paper a nullity?   Third, assuming Far-
mer to have been a mere trespasser, was it necessary for the
defendant to kill him in self-defense or in the protection of
his dwelling house?

By objections to evidence and by requests to charge, the
defendant asked the Circuit Judge to lay down as the law
the utterly untenable proposition that the defendant could
treat Farmer as a mere intruder in the office of con-
stable and a bald trespasser on his premises because
of certain alleged irregularities in his appointment

and qualification as a constable. Section 38 of the dispensary statute of 1907 provided: "It shall be the duty of the sheriffs and their deputies, magistrates, constables, rural police, city and town officials, to enforce the provisions of this act. If they fail to do so, it is hereby made the duty of the Governor to enforce the same, and he is hereby authorized to appoint such deputies, constables and detectives as may be necessary." 25 Stat. 477. Under this law his Excellency the Governor, on December 22, 1907, issued a commission to Farmer as a constable, signed by the Governor and the Secretary of State, and sealed with the great seal of the State. This commission being by its terms limited to thirty days, the Governor on January 3, 1908, over his own signature alone, reappointed Farmer for thirty days, and again on February 6, 1908, in the same manner, reappointed him for another period of thirty days. If these appointments were valid then Farmer held a legal appointment on February 22, 1908, the day of the homicide. The point is not made that a commission was necessary to the validity of the appointment; but the objection is that there was no official bond of Farmer in force at the date of the homicide. The Court expressly decided in *State* v. *Messervy,* 86 S. C. 503, that constables appointed by the Governor under the act of 1907, above quoted, were not required to give bond, and that even if they were, one holding the appointment of the Governor without giving the bond must be respected as a *de facto* officer. As against the objections made by the defendant, Farmer was a *de jure* officer, entitled to exercise the powers of a dispensary constable. Respondent's argument embraces the point that the appointment of Farmer by the Governor was sufficient to clothe him with authority as a dispensary constable without a formal commission, but we pass that by because it is not made by the exceptions.

It is obvious that no special appointment of Farmer by the magistrate was necessary. Section 22 of the act of

1907 (25 Stat. 472) provides that the search warrant shall empower "any officer or person who may be deputized" to make the search. Farmer, being an officer appointed for the express purpose of enforcing the dispensary law, was an officer within the terms of the law, and as such officer was authorized to execute the warrant without special appointment by the magistrate.

The position of most importance urged in support of the appeal is that a search warrant must be executed and returned within a reasonable time, that the question of what is a reasonable time is one of law to be decided by the Court, and that the Circuit Judge should have held as a conclusion of law that the search warrant issued in this case on January 4, 1908, by reason of undue delay in its execution, was a nullity on February 22, 1908, when Farmer was killed in the effort to execute it. The only case to be found supporting this position is *State* v. *Guthrie,* 90 Maine 448, 38 Atl. 368. There a warrant issued for the arrest of defendant and the search of his premises was held to have expired before its execution three days after its date; and the defendant was accordingly discharged. The Maine statute required the officer to "make immediate return of the said warrant;" and the Court held that the question whether the delay was unreasonable was a question of law for the Court, and that as there was no reason shown for the delay of three days, such delay must be declared unreasonable. It is important to observe that the question before the Maine Court was whether the defendant should be discharged from arrest under the warrant, not whether he would have been justified in shooting an officer undertaking to enforce the warrant.

The Constitution of South Carolina provides: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue except upon probable cause, supported by oath or affirmation, and par-

ticularly describing the place to be searched and the person or thing to be seized." Article I, section 16. This section is itself a declaration of the danger to the liberty of the citizen from searches and seizures of private property by public authority, and it imposes on officers the duty of issuing search warrants with careful discretion and executing them with reasonable caution and promptness. Having in view this provision of the Constitution, Judges and juries when such warrants are under review should scrutinize them with care to the end that there may be no unreasonable search or seizure of private property. But in deciding what is reasonable it is to be borne in mind that searches and seizures under the authority of law have been found by all civilized peoples necessary to protect life and property against the attacks of the criminal classes; and such process should not be set aside or declared void on slight or technical grounds. Here the ground of attack is that the warrant was not promptly executed and it is insisted that the Court should have charged the jury as a proposition of law that it had no force. Under the general rule adopted in this State it is the province of the jury to determine what is reasonable promptness in the discharge of any duty imposed by law or by the act of the parties, unless only one conclusion can be drawn from the evidence. *Edgefield Mfg. Co.* v. *Maryland Casualty Co.,* 78 S. C. 73, 58 S. E. 969; *Chesterfield* v. *Ratcliffe,* 52 S. C. 563, 30 S. E. 593; *Hays* v. *Hays,* 10 Rich. 419; *Gray* v. *Bell,* 2 Rich. 67. It is true that in this case the delay of forty-eight days in serving the warrant seems long, but we are not prepared to say that no other conclusion can be drawn than that the delay was so unreasonable as to destroy the force of the warrant. A warrant cannot be legally enforced by an officer so long after its issuance that the search could not be reasonably referred to a *bona fide* effort for the recovery of the particular property therein mentioned. It cannot be held back by an executive officer as a menace to the citizen. But manifestly there can be no

hard and fast limitation of time fixed by judicial authority as unreasonable in all cases and under all circumstances.

Every case must depend on its own facts. The character of the person charged with having the stolen or contraband goods in possession, the nature of the crime and other circumstances are to be taken into account. It is obvious to all men that a sporadic or untrained criminal and a professional criminal would stand on a different footing. In the case of an ordinary man suspected of being in possession of stolen goods or contraband liquor it might well be held beyond all doubt reasonable that a search warrant should be enforced within a few days. On the other hand, when the officer has the task of recovering stolen goods or taking contraband liquor from a trained and disciplined criminal, the enemy of society, it may take weeks of patient observation to ascertain the moment when a search would be of any avail. In such a case the enforcement of the law might be rendered impossible by a judicial holding that a reasonable time for the execution and return of a warrant is the same as in the case of an ordinary criminal. The distinction applies strongly in this case. There was evidence from the defendant himself that he was a professional criminal—one of that degraded class of men who apply their talents and energy to the acquisition of money in a nefarious business based on secret or defiant violations of law, and thus prey upon society. Under this evidence and other facts appearing in the case, the Circuit Judge properly submitted to the jury the question whether the execution of the warrant had been unreasonably delayed.

This conclusion makes unnecessary the consideration of the question whether the defendant would not have shot at his peril in resisting an officer demanding admittance under a search warrant even after the expiration of a reasonable time from the date of its issuance.

Objection is also made to the warrant that it does not sufficiently describe the premises and the property. The

500 · FARMER *v.* SELLERS.

following clause of the warrant describes the property to be seized about definitely as it is possible to describe a lot of contraband liquor: "That the following contraband intoxicating liquors are now unlawfully in the possession, storage and keeping of and on the premises occupied by W. H. Sellers in the State and county aforesaid, the said place being known as No. 1216 Gadsden street, in the city of Columbia, S. C., to wit: a lot of whiskey, brandy, wine, rum, gin and beer, in barrels, demijohns, bottles and other vessels, in the city of Columbia, S. C."

There is no force in the objection that the affidavit describes the premises as 1216 Gadsden street, while the warrant directs the officer to enter into and search 1216 Gadsden street, "or other place appurtenant thereto." The point would be worthy of consideration if the homicide had occurred in the effort to enter and search any other place than the house known as 1216 Gadsden street; but the place which the officer undertook to enter was 1216 Gadsden street and no other. Nor is there any merit in the objection that the warrant directed the search to be made by day or by night when the statute forbids search of a dwelling house in the nighttime. No effort was made to search the dwelling house of the defendant in the nighttime, and there is therefore no ground to allege that the statute was violated. If Courts gave heed to such extremely technical objections, the law would indeed be weak in its struggle with crime.

We are unable to perceive how evidence that Mrs. Farmer, the plaintiff, was the prosecuting witness on the trial of defendant Sellers on the charge of murdering Farmer could be of value to the defendant. It did not require such evidence to show that Mrs. Farmer had strong convictions against the defendant, for that was evident from the fact that she was the widow of the man whom defendant had killed, and that she had brought this action.

Exception is taken to the italicized portion of the following instruction on the ground that it imposes the duty under all circumstances on the owner of a house to lay his hands gently upon an intruder. "I charge you that a person's home, his dwelling, is his castle, and he has the right to protect his own home from unlawful invasion, he has the right if the person comes into his home against his will to use such force as is necessary to protect himself from invasion, unlawful invasion of his home. He has no right to use any more force than is necessary, but has the right to oppose force with force, to protect his home by the exercise of just so much force as is necessary to protect it, or appears to be necessary from the circumstances surrounding him at the time. *If a person invades your home you have the right to eject him, your duty in the first instance is to go and lay your hand on him gently, and if he resists you, then you have got the right to oppose sufficient force to overcome his resistance.*" Farmer was killed while forcing his way into defendant's house. On that point there was no dispute. The practical question before the jury then was not whether the defendant took the proper means to get Farmer out, but whether he was justified in shooting him, while he was forcing his way in, in order to prevent the entry or to prevent defendant's own death or serious bodily injury. On this issue the instruction was clearly given in other portions of the charge that if Farmer was entering without authority of law the defendant had a right to oppose him by force to the extent of taking his life if necessary.

There is no ground for the assignment of error set out in the twelfth and fifteenth exceptions, for the substance of the requests of the defendant referred to in these exceptions was plainly given to the jury in the general charge.

Defendant's counsel earnestly insist that there was error in refusing the following request: "If the deceased had threatened the life of defendant, and the defendant honestly

believed that the deceased intended to carry out the threat by taking his life or doing some serious bodily harm, and the jury viewing the circumstances from the standpoint of the defendant at the time of the fatal encounter, conclude as a reasonable man of ordinary reason and firmness that he was justified in the belief, then the defendant was entitled to be more watchful and to interpret the acts of the deceased more harshly than he otherwise would have been justified in doing." The Constitution forbids a trial Judge to charge a jury with respect to matters of fact. Therefore, to tell the jury what force they should give to evidence of threats, or to any other evidence on a contested issue of fact, was beyond the province of the Judge. The consideration of what inferences the defendant might properly draw and what action he might properly take in view of threats made against him was for the jury alone. Besides, the proposition submitted by the defendant is so perfectly obvious to all, that to state it or to omit to state it to the jury could not possibly have affected the verdict. There was no error therefore in refusing the request.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.