David 0. Boehm, J.
This is an application brought by the defendant for an order suppressing property seized pursuant to paragraph (a) or (b) of subdivision 2 of CPL 710.60 or for a hearing pursuant to CPL 710.60 (subd. 4).
The grounds for the motion are that the warrant was issued without probable cause and was improperly executed in (a) authorizing a general search for ‘ ‘ records, mail, correspondence and communications ” without a showing of probable cause therefor; (b) authorizing a nighttime search without any specified reason therefor; (c) authorizing a “ no-knock ” entry, absent the recital of facts justifying the same.
In addition, the defendant alleges that the search warrant, issued on the basis of a police officer’s affidavit incorporating information given to him by an undisclosed informant and by the police officer’s independent verification of the informant’s information, was not sufficient because of the failure to set forth the informant’s previous reliability and because the informant’s physical and telephone identification of the person from whom he allegedly purchased marijuana was not confirmed or otherwise independently verified.
The defendant disputes the existence of an informant but asks if there is one that he be produced and subjected to examination under oath at a suppression hearing.
The defendant further attacks the warrant and the application therefor because the items to be seized are preprinted on *700 the search warrant as are a number of paragraphs in the affidavit relating to the items to be searched for and requesting both a day or nighttime search and a no-knock entry.
The affidavit supporting the search warrant states that an undisclosed informant advised police that the defendant was dealing in drugs. The police then checked with the Rochester Telephone Company and obtained the telephone number of defendant’s apartment. The telephone company records indicated that an individual named Thomas Mangialino lived at No. 1169 St. Paul Street in Rochester. On February 20, 1973 the police officer who drew the affidavit dialed the number listed for Mangialino and listened in on an extension while the informant spoke with a person identifying himself as 1 ‘ Tom ’ ’ who offered to sell drugs to the informant.
Again on February 26, 1973 the same police officer dialed Mangialino’s telephone number and listened in on an extension while the informant spoke with the person identifying himself as “ Tom ” and the discussion again concerned the sale of drugs by “ Tom ”. The same thing happened again on March 5, 1973.
Upon the execution of the search warrant Thomas Mangialino, the defendant, was in fact the occupant of the apartment at No. 1169 St. Paul Street. Found in his premises were marijuana and hashish totaling 6 pounds and .66 ounces, and three pipes containing marijuana residue in their bowls.
In reviewing the defendant’s arguments it is necessary to begin with the fundamental rule that a warrant describing property to be seized in vague or general terms does not meet constitutional requirements. In the words of the United States Supreme Court in Marron v. United States (275 U. S. 192, 196): “ The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.”
Stanford v. Texas (379 U. S. 476), cited by the defendant, is probably the classical illustration of what happens when a warrant lacking specificity is combined with shotgun police action. There the warrant called for the seizure (p. 477) of “books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas ”. Pursuant to the warrant, the police seized some 300 books and pamphlets, including (p. 479) “ works by such diverse writers as Karl Marx, Jean Paul Sartre, Theodore Draper, Fidel Castro, Earl Browder, Pope John *701 XXIII, and Mr. Justice Hugo L. Black.” Also taken were the defendant’s marriage certificate, his insurance policies, and miscellaneous household and personal papers. The Supreme Court, in an extended discussion of the historical background of the Fourth Amendment, held the search unreasonable because of the warrant’s‘defectiveness as a general warrant (see, also, Marcus v. Search Warrant, 367 U. S. 717; People v. Matherson, 16 N Y 2d 509).
However, absent such a flagrant situation, courts have not required absolute linguistic precision in describing the items to be seized and have approved descriptions such as ‘ ‘ lottery tickets and other paraphernalia ”, “ letters, tickets, papers, records and books ”, “ instruments of the crime ”, “ narcotics consisting of dangerous drugs, heroin and marijuana, together with paraphernalia instrumental in the use of said contraband ”, “cooking utensils ”, and “blood stained clothes ”. (Cook, Requisite Particularity in Search Warrant Authorizations, 38 Tenn. L. Rev. 496, 505-506; see, also, 68 Am. Jur. 2d, Searches and Seizures, § 82.)
A good analysis of when such broad language may permissibly be used is contained in People v. Schmidt (172 Col. 285, 290): “ If the purpose of the search is to find a specific item of property, it should be so particularly described in the warrant as to preclude the possibility of the officer seizing the wrong property; whereas, on the other hand, if the purpose is to seize not a specific property, but any property of specified character, which by reason of its character is illicit or contraband, a specific particular description of the property is unnecessary and it may be described generally as to its nature or character. ’ ’
What is required is a recital of information which will reasonably justify the conclusion that certain property which may be made the subject of a search under a warrant is located in particular premises. Essentially, the line required to be drawn is that between mere suspicion and probable cause. Where probable cause exists, the balance between necessity and the benefit to society on the one hand and the invasion of the privacy of the home on the other is weighted in favor of the former, and in a doubtful or marginal case, a search under a warrant will be sustained where without one it would be defective (Jones v. United States, 362 U. S. 257; United States v. Ventresca, 380 U. S. 102).
In Ventresca, Justice Goldberg discussed the policy reason for this (p. 108): “ Technical requirements of elaborate specificity once exacted under common law pleadings have no proper *702 place in this area. A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.” (See, also, Mascolo, Specificity Requirements for Warrants under the Fourth Amendment: Defining the Zone of Privacy, 73 Dickinson L. Rev. 1, 7-8.)
As one commentator has observed: ‘ ‘ The warrant ought not to be an obstacle in a game but only a protection against arbitrary and capricious police action.” (Paulsen, Safeguards in the Law of Search and Seizure, 52 Northwestern L. Rev. 65, 66).
Turning to what the proper subjects of seizure are, we find that they fall within several broad categories: (1) fruits of the crime, (2) contraband, (3) instrumentalities of the crime, and (4) evidence.
Books, papers and correspondence have been held to be legally seizable both as instrumentalities of the crime and as evidence (see People v. Givens, 21 N Y 2d 929 [books and records in loan shark operation]; Marron v. United States, 275 U. S. 192, supra [ledgers and bills for gas, water and power seized in speakeasy]; Abel v. United States, 362 U. S. 217 [a spy’s code books]; People v. Thayer, 63 Cal. 2d 635, cert. den. 384 U. S. 908 [records of false billings of welfare cases]).
As stated in Gouled v. United States (255 U. S. 298, 309), which is the case that established the prohibition against the seizure of mere evidence (since overruled by Warden v. Hayden, 387 U. S. 294): “There is no. special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized ”.
It is evident, then, that even after Gouled and prior to Warden, books, records, papers and correspondence were the proper subject of seizure provided they fell within the classification of instrumentalities of a crime. Essentially, the pre-Warden test was whether the papers of the accused were seized upon a search solely for use'as evidence of the crime which he was then accused or suspected of. If so, the search was regarded as unreasonable and invalid. After Warden, books and papers became seizable for their value as evidence as well.
Two years after Warden, the United States Court of Appeals for the Second Circuit, per Judge Friendly, in holding admissible a letter which was evidence of a conspiracy, anticipated the defendant’s raising of the Fifth Amendment as an alternate *703 ground for suppressal, as follows: “We find no distinction of constitutional dimensions between the seizure of Hayden’s clothing and of Egan’s letter. While the demise of the ‘ mere evidence ’ rule may well require the development of some new restriction on allowable search and seizure in its place, we suggest with deference that an approach geared to the objective of the Fourth Amendment to secure privacy would seem more promising than one based on the testimonial character of what is seized * * * The Fourth Amendment does not protect broadly against the seizure of things whose compulsory production would be forbidden by the Fifth.” (United States v. Bennett, 409 F. 2d 888, 896, cert. den. sub nom. Jessup v. United States, 396 U. S. 852 and sub nom. Thomas v. United States, 402 U. S. 984; see, also, United States v. Poller, 43 F. 2d 911; Landau v. United States Attorney for Southern Dist. of N. Y., 82 F. 2d 285, cert. den. 298 U. S. 665).
Accordingly, correspondence directly connected with and relating to the existence of the marijuana within the premises in this case could have been properly seizable upon a showing of probable cause. The question here presented, however, is whether the absence of any reference to correspondence, except in conclusory fashion, in the affidavit supporting the warrant makes the warrant invalid because it authorizes the seizure of such correspondence without an adequate showing of probable cause.
One might seek an answer from the practice of issuing warrants permitting the search and seizure of heroin and drug paraphernalia in addition to marijuana where the affidavit supports probable cause for a marijuana search only. However, the distinction is an obvious one. Like illegal alcohol or gambling paraphernalia, heroin is contraband per se and in a legal search for other items would be subject to seizure at sight. (See, e.g., People v. Hendricks, 45 Misc 2d 7, 11, revd. on other grounds 25 N Y 2d 129.)
Being contraband, it is like the medieval deodand in which the possessor no longer has a property right. Therefore, if there is probable cause to support a search for marijuana, any additional language as to associated illegal drugs and paraphernalia is surplusage only and would not of itself invalidate the warrant. A similarity can also be drawn between that situation and one involving the broad, inclusive language in a warrant authorizing the search of an illegal loan shark or gambling establishment (cf. People v. Givens, 21 N Y 2d 929, supra; People v. Shader, 56 Misc 2d 585).
*704 On the other hand, possession of letters and other correspondence is, if anything, prima facie legal. Their permissible seizure must rest upon something more than a search for items which are by their very nature illegally possessed.
This may be done in one of two ways: (1) by a showing in the affidavit that there exists probable cause to believe that there has been an exchange of correspondence reasonably and directly related to the possession or traffic in drugs and that letters involved in such correspondence are in the premises; or (2) that the privacy of the accused having been legally intruded upon by a valid warrant to search for drugs, letters pertaining thereto in plain and open view may also be seized.
Thus, in Coolidge v. New Hampshire (403 U. S. 443), four members of the court took the view that once a lawful entry has been made pursuant to a search warrant, the seizure of non-enumerated items, even “mere evidence”, comes within the" “ plain view ” doctrine (pp. 467-468). The only limitation would be where the police know in advance that certain items of evidence will be found but deliberately fail to include them among the items to be seized (p. 470).
This is the distinction which may be drawn between the instant case and People v. Rainey (14 N Y 2d 35), cited by the defendant. There the Court of Appeals, per Judge Dye, particularly pqinted out that the police in obtaining a search warrant knew, but failed to advise the court, that the address for the premises ¡to be searched consisted of more than one residential apartment. “ While we are satisfied ” the court said (p. 37), “ that probable cause existed for the search of defendant Rainey’s apartment, insofar as Mrs. Allison was concerned nothing was alleged against her. As a matter of conceded fact, she was at all times an innocent and law-abiding citizen, a circumstance known to the officer but for some reason not revealed in advance to the court.”
In contrast, the police in this case endeavored to advise the court of everything which conceivably might be found in the premises. Nothing was concealed and this kind of disclosure, even if over-broad, should not be discouraged by the sanction of suppression wher'e the warrant and its execution are otherwise lawful.
I find there was a sufficient recital in the affidavit under attack to support a showing of probable cause to search the defendant’s premises for marijuana.
The affidavit was sufficiently detailed and complete as in the circumstances to lead a reasonably discreet and prudent man to believe that contraband was being illegally possessed (People *705 v. Montague, 19 N Y 2d 121, cert. den. 389 U. S. 862; see, also, People v. Marshall, 13 N Y 2d 28; People v. Rogers, 15 N Y 2d 422).
The affidavit was more than sufficient to establish probable cause for a reasonably cautious, prudent and experienced police oficer, which is the present standard (People v. Valentine, 17 N Y 2d 128; People v. Corrado, 22 N Y 2d 308, 313, “ a police officer is entitled to draw on his wdiolc knowledge and experience as a criminal investigation officer ”; People v. Powell, 36 A D 2d 177, 180, affd. 30 N Y 2d 634, ‘1 an ensemble of facts, a composite of knowledge ”; United States v. Harris, 403 U. S. 573).
Viewed in context, the facts in their totality form a picture of the defendant engaged in illegal drug traffic.
In deciding applications of this kind, the plain and practical common sense view urged by the United States Supreme Court should operate as at least one criterion. In Brinegar v. United States (338 U. S. 160, 175) the court said: “In dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.”
The additional language permitting a search for contraband such as heroin, hypodermic instruments and other illegal drugs is sufficiently associated with the crime of possession of marijuana, also an illegal drug, as to avoid the kind of uncontrolled and general searches which are prohibited by the Fourth Amendment. In addition, for the reason previously given, the inclusion of such language may be regarded as permissible surplusage.
However, this is not the case with respect to the authorization to search for and seize “ records, mail, correspondence, and communications used in conjunction with the sale or possession of any dangerous drugs.” The bare, preprinted, boilerplate allegation in the State trooper’s affidavit, “that a person will maintain correspondence, mail, records or forms of communication showing his contacts with other person (s) in the sale or possession of dangerous drugs”, is clearly conjectural. It is insufficient to authorize a search of all of the defendant’s personal correspondence in a quest for evidence which is based upon nothing more than suspicion.
The argument in the District Attorney’s memorandum that the defendant’s use of the telephone to deal in drugs justified an assumption that he also used the mails is meaningless. There were only three phone calls referred to in the affidavit; they were all local calls; and they were all initiated by the police. *706 There is nothing in the State police officer’s affidavit to raise any inference that the defendant was dealing outside of the immediate area of Monroe County or that his operation involved the mails.
Although it does not appear from any of the papers presented in this application that the defendant’s correspondence was actually searched or seized, this would not, in and of itself, necessarily affect the result. A warrant which is defective for lack of specificity and probable cause will not be saved by the legal scope of a search. c 1 Although evidence which is seized may be within the description of the warrant, this is not determinative of the issue of legality if its reach exceeds the bounds permitted by the fourth amendment.” (Mascolo, Specificity Requirements for Warrants under the Fourth Amendment: Defining the Zone of Privacy, 73 Dickinson L. Rev. 1, 13, citing People v. Bosco, 56 Misc 2d 1080, and United States v. Markis, 352 F. 2d 860, 864 vacated on other grounds 387 U. S. 425; see, also, People v. Rainey, 14 N Y 2d 35, supra).
Therefore, the warrant must fall and the items seized thereunder be suppressed unless that part of the warrant which fails for lack of specificity and probable cause may be separated from the part which is valid and sustainable. The issue is, does the tainted part of the warrant so contaminate the whole that the entire warrant must perish, or may the sound part be severed and thereby preserved. The question of whether this kind of surgery may be performed might also depend to some extent upon the facts of each case, e.g., how was the warrant executed?
A search of the law in New York indicates that this is apparently a case of first impression. No cases responding to this point could be found, except People v. Rainey (14 N Y 2d 35, supra), which, as previously pointed out, is distinguishable on the facts.
People v. Baker (23 N Y 2d 307), cited by the defendant, may also be distinguished because there the item seized, a sweater, was not included in the warrant, which was issued to search for a knife. As the Court of Appeals said, “ The right to search for and seize one item does not permit the inference that there is probable cause for other items.” (P. 321; see, also, People v. Cefaro, 21 N Y 2d 252.) In the case at bar nothing was seized which was not set forth in the warrant.
However, there is strong and persuasive authority in other jurisdictions to permit a severance in order to save a warrant or a search. This would seem to be supported by logic as well. If-there was probable cause to issue a search warrant describing *707 particular items to be seized, and such items are found and those items alone constitute the basis of the criminal charge, there is no reason why some additional unsupported language in the search warrant, while to be avoided, should not be severable, particularly where no items seized thereunder are included as a basis for the criminal charge.
Federal courts as well as the highest courts in the States of California, Connecticut and the District of Columbia have held that such overly broad language in a search warrant is severable.
Probably the leading case is Aday v. Superior Ct. of Alameda County (55 Cal. 2d 789), in which the Supreme Court of California ruled (p. 793) that a search warrant including among items to be seized 1‘ any and all other records and paraphernalia ”, did not satisfy the requirement of reasonable particularity of' description except as to copies of tax returns and two designated books which were specifically listed in the search warrant. The court held, however, that although the warrant was defective in one respect, it did not follow that the entire Avarrant was invalid. The court suggested that any other conclusion Avould mean that the seizure of certain articles, although proper if vieAved separately, would have to be condemned solely because the warrant was defective with respect to other items. “ The invalid portions of the warrant ”, the court stated, “ are severable from the authorization relating to the named books, which formed the principal basis of the charge of obscenity. The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles. (Cf. United States v. Nine 200-Barrel Tanks of Beer, 6 F. 2d 401, 402; United States v. Bell, 48 F. Supp. 986, 997).” (Aday v. Superior Ct. of Alameda County, 55 Cal. 2d 789, 797, supra.)
In the instant case, this argument gains additional weight because no articles other than those particularly described in the Avarrant Avere seized.
In the Nine 200-Barrel Tanks case cited in Aday the defendant contended that certain illegal action pursuant to a search warrant rendered the entire search illegal. That court held, however, that the various portions of the warrant could be separated and the seizure of the items specifically enumerated in the warrant Avas upheld. The Bell case, also cited in Aday, adopted the same view.
The Supreme Court of Connecticut in 1970 came to the same conclusion. In State of Connecticut v. Johnson (160 Conn. 28, 34), the search Avarrant set forth. particular items to be seized and then Avent on to authorize also the seizure of any ‘ ‘ parapher *708 nalia which could be used to violate Sec. 54 — 197 of the Connecticut General Statutes.” The tiourt, in discussing general search warrants, made abundant reference to Stanford v. Texas (379 U. S. 476, supra) and then went on to conclude that the articles seized under the above broad language were inadmissible but this did not also render inadmissible articles which were particularly described in the warrant (see, also, State of Connecticut v. Taylor, 28 Conn. Supp. 19).
Many Federal courts have followed the same reasoning, not only with respect to search warrants but also as to items seized in the search itself. Indeed, this appears to have been the. rule in the Second Circuit for the past fifty years (Kirvin v. United States, 5 F. 2d 282; United States v. Cangiano, 464 F. 2d 320; United States v. Spallino, 21 F. 2d 567; United States v. Baldwin, 46 F. R. D. 63).
Other Federal cases are to the same effect (United States v. Castle, 213 F. Supp. 52, affd. 347 F. 2d 492, cert. den. 381 U. S. 953, in which the court referred to rules of the Fed. Rules Crim. Pro., U. S. Code, tit. 18, Appendix, § 41, subd. [e]; § 41, subd. [b], par. [2], as consistent with its holding; United States v. Langford, 303 F. Supp. 1387; United States v. Russo, 250 F. Supp. 55).
The highest court in the District of Columbia has also followed the severability rule, specifically citing Aday v. Superior Ct. of Alameda County (55 Cal. 2d 789), United States v. Ketterman (276 A. 2d 243 [D. C. App.]).
I recognize, as did the court in the A day case, that invalid portions of a warrant should not be treated as severable under all circumstances. The court there cautioned: “We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.” (55 Cal. 2d 789, 797, supra.)
Such an exception is a salutary one and should be carved out of any rule of severability in order to avoid abuse. However, such an exception would not apply to the instant case. The affidavit was drafted and the warrant issued with specific drugs and related items in mind. The language was as particular as •it could be under the circumstances. It should not matter that some of the material was preprinted as long as it was pertinent and appropriate to the particular intrusion for which lawful approval was being sought.
*709 However, this leads us to the defendant’s other points, for the warrant is also attacked for authorizing a “ no-knock ” entry and a nighttime search. In neither case, as defense counsel correctly argues, was there a showing of probable cause for obtaining such authority.
With respect to the “no-knock” provision, its reasonable purpose is implicit in the very nature of the articles for which the , search warrant was issued. Although there was nothing in the affidavit specifically indicating that the marijuana would be likely to be quickly removed or destroyed, this was a factual inference which the Magistrate signing the warrant could reasonably draw.
In People v. De Lago (16 N Y 2d 289, cert. den. 383 U. S. 963), the Court of Appeals upheld a search warrant containing a ‘ ‘ no-knock ’ ’ provision although there was no reason given for such authority in the affidavit. The court said (p. 292) : 1 ‘ Although the validity of a warrant is determined as of the time of its issuance (People v. Rainey, supra), in this instance it was represented to the court by affidavit that gambling materials were likely to be found at this location, and in issuing the warrant .the court could take judicial notice that contraband of that nature is easily secreted or destroyed if persons unlawfully in the possession thereof are notified in advance that the premises are about to be searched.” (See, also, People v. Misuraco, 16 N Y 2d 542.)
Nor does the authorization for a nighttime search invalidate the warrant. The Second Department met this precise situation in 1969 by ruling that the defect was of a technical nature only and could be overlooked in view of the fact that the search was conducted during the daytime, which is exactly what occurred here (People v. Varney, 32 A D 2d 181). In addition, the Appellate Division held that the requirement for authorizing a nighttime search is legislative, not constitutional.
As it developed, the practical interpretation placed on the warrant by the police in the case at bar was to confine the search to the daytime and limit the search to one for contraband drugs. There is no showing that the police looked for correspondence or for anything other than drugs.
All of these considerations have coalesced in making the determination to deny the defendant’s motion to vacate the search warrant.
Defendant’s motion for a suppression hearing is granted.
Determination of whether the identity of the informer should be disclosed will be deferred until the suppression hearing *710 and will be made in accordance with the tests established by the Court of Appals (People v. Malinsky, 15 N Y 2d 86; People v. White, 16 N Y 2d 270; People v. Cerrato, 24 N Y 2d 1; People v. Castro, 29 N Y 2d 324).
Perhaps one further comment is in order. Although it was suggested some years ago by Justice Shapiro in People v. Hendricks (45 Misc 2d 7, 12, revd. on other grounds 25 N Y 2d 129, supra) that the police obtain the assistance of full-time legal counsel to help them in preparing applications for search warrants, this has not been done by either the local or .the State police. The result is that the police, even when making a conscientious effort to comply with the law, sometimes err procedurally where otherwise the application has substance.
The law of search and seizure is often complex and dependent upon narrow and difficult questions of law.. Skillful and competent appellate Judges will differ from interpretations made by skillful and competent Trial Judges and appellate courts will differ from each other. It is this realization that quite often resolves a close question in favor of the validity of a search warrant.
On the other hand, this does not avoid the necessity of making a showing of probable cause in every case and of insisting upon an affidavit which fulfills this requirement.
The affidavit here, with its preprinted, boiler-plate statements, need not be subject to criticism on that account alone. This court takes judicial notice of the fact that the legal profession uses a wide range of preprinted forms, from mortgage foreclosures .to summary proceedings against an impoverished tenant to applications for an order of contempt and commitment of some penurious debtor. People’s property and liberty are frequently placed in hazard by printed forms, even in this free society.
However, where the allegations in a preprinted affidavit are inadequate or, as here, merely marginal, it then devolves upon the Magistrate, if he decides the application has merit, to supplement any deficiencies by requiring a supplemental affidavit or some testimony, recorded and under oath, of the police officer who prepared the affidavit. This was not done here.
Although it is understandable for a police officer to submit a proposed search warrant containing preprinted authority for a search which has not been fully justified in the affidavit, it is difficult to understand why a Magistrate would sign it in *711 that form. Were this search not saved by the proper scope of its execution, it might have failed simply because of the Magistrate’s inattention or lack of care. The prosecution of law violators should not have to depend upon such ephemera.