609 S.E.2d 556

**The STATE, Respondent,**

v.

**Nepolean THOMPSON, III, Appellant.**

**No. 3937.**

Court of Appeals of South Carolina.

Submitted Nov. 1, 2004.

Decided Jan. 31, 2005.

Rehearing Denied March 17, 2005.

194

Trent Neuell Pruett, of Gaffney, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

KITTREDGE, J.

Nepolean Thompson appeals his convictions for drug related offenses, arguing evidence was seized under an invalid search warrant. The questions presented are (1) whether the warrant sufficiently described the person or things to be seized; (2) whether the warrant was issued based on stale information; and (3) whether the warrant authorized an unreasonable bodily intrusion. We affirm.

## FACTS

Officer A.B. Phillips of the Blacksburg Police Department was assigned to the Cherokee County Metro Narcotics Task Force. In 2002, Phillips was investigating possible illegal

drug activities involving Thompson. After the investigation had been ongoing for several months, Phillips received a tip from a confidential informant that the informant had seen illegal narcotics in Thompson's possession. Based on this information, Phillips prepared an affidavit and obtained a search warrant from a magistrate. The affidavit read:

Affiant's belief is based upon information received from a confidential reliable informent [sic], who has provided information in the past that has proven true and correct and led to the arrest and conviction of those involved in illegal drug trade. This C.R.I. states that he or she has seen a quantity of crack cocaine on the above described person within the past 72 hours. Affiant's [sic] knows this C.R.I. to know crack cocaine when seen by past information received from C.R.I.

The warrant issued described the permitted search as follows:

### Description of Premises (Person, Place or Thing) To Be Searched

One, Napoleon [sic] Thompson III, aka Buster, is to be searched. A black male, DOB 5–29–79, DL number 0011405948, HGT 5–10, WGT 145lbs, address 207 E. Seven Springs St., Blacksburg SC. The search will include all clothing, shoes, hats, socks, under garments, jackets, scarfs [sic], bandannas, any vehicle and or any means of transportation that Mr. Napoleon [sic] Thompson III may be traveling in or on, and Mr. Napoleon [sic] Thompsons mouth. The search will also include any types of luggage, small or large in Mr. Thompsons [sic] poss.

Officer Phillips promptly undertook efforts to execute the warrant. The day after the warrant was issued, Phillips received information that Thompson "would be traveling down South Charleston Street [in Blacksburg] with crack cocaine and marijuana in his possession." This information was disseminated to officers in the area, and shortly thereafter, a police officer spotted Thompsons car traveling on South Charleston Street. When Officer Phillips arrived on South Charleston Street, Thompson had parked his car and entered a convenience store. When Thompson returned to his car, he was confronted by the officers. After being informed of the search warrant, Thompson stepped out of his car as instructed

by the officers. Thompson then pulled two small plastic bags out of his pocket, threw them in the air, and attempted to flee. Phillips grabbed Thompson before he could get away and detained him.[1] The plastic bags Thompson had tossed away were recovered by police and held as evidence. Subsequent analysis revealed the bags contained marijuana and crack cocaine.

Thompson was taken to the police department and searched. The only additional evidence the search produced was $2,654 cash found in Thompsons wallet.

Thompson was charged with possession with intent to distribute crack cocaine and possession with intent to distribute crack cocaine within a half mile of a school. Before trial, Thompson moved to suppress the crack cocaine and the marijuana evidence. Thompson claimed the drug evidence was inadmissible because it was obtained under an invalid search warrant. Specifically, Thompson argued the warrant was void because: (1) the warrant impermissibly permitted the search of Thompsons person and was otherwise overbroad with regard to the places and things it authorized law enforcement to search; (2) the affidavit submitted to obtain the warrant recited stale information insufficient to support a finding of probable cause; and (3) the warrant permitted an unreasonable bodily intrusion or strip search of Thompson. The trial court disagreed and denied the motion. Thompson

---

1. Contrary to Phillips' testimony, it is clear that Thompson was under arrest when he was first detained in the convenience store parking lot. The determination of whether an individual is under arrest is measured objectively, and the subjective view of the particular officer is not controlling. *See Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (opining that "[o]ur decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned"). When Thompson was detained in the parking lot, following seizure of the suspected contraband, he was so substantially deprived of his freedom of movement as to constitute a full custodial arrest. *See Park v. Shiflett*, 250 F.3d 843, 850 (4th Cir.2001) (holding that "[t]he test for determining whether an individual is in custody or under arrest is whether, under the totality of the circumstances, the suspect's freedom of action is curtailed to a degree associated with formal arrest" (internal quotation marks omitted)).

was ultimately convicted of possession of crack cocaine. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson,* 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). This court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000). A deferential standard of review likewise applies in the context of a Fourth Amendment challenge to a trial court's fact-driven affirmation of probable cause. *State v. Brockman,* 339 S.C. 57, 65–66, 528 S.E.2d 661, 665–666 (2000) (holding that whether a search violated the parameters of the Fourth Amendment depends upon "a number of antecedent determinations, each of which is inherently fact-specific" and "entails an inquiry into the totality of the circumstances" and the appellate court must affirm if there is "any evidence" to support the ruling). This appeal presents both factual and legal challenges to the rulings of the trial court concerning the search warrant. Following *Brockman,* we adhere to the "any evidence" standard of review with respect to the factual findings of the trial court.

## LAW/ANALYSIS

### I. Permissible Scope of Search Authorized Under the Warrant

We first address Thompsons claim the warrant failed to describe with sufficient particularity the person, place, or thing to be searched. Though we conclude there is sufficient evidence to support the trial courts finding that some portions of the warrant are overbroad, we further concur with the trial court and find this fact does not render the entire warrant void or require suppression of the evidence seized in this case.

Under both the United States and South Carolina constitutions, search warrants may not be issued except "upon probable cause, supported by Oath or affirmation," and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV; S.C. Const. art. I, 10. Following these constitutional requirements, South

Carolina Code section 17–13–140 (2003) requires a search warrant be issued "only upon affidavit sworn to before the magistrate [or other judicial officer]" and only if the magistrate "is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist. . . ." The magistrate issuing the search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In reviewing the validity of a warrant, an appellate court may consider only information brought to the magistrate's attention. *State v. Martin*, 347 S.C. 522, 527, 556 S.E.2d 706, 709 (Ct.App.2001).

▆▆▆ The specific requirement that a search warrant particularly describe the person, place, or thing to be searched "is aimed at preventing general warrants—those authorizing a general, exploratory rummaging in a persons belongings." *State v. Williams*, 297 S.C. 404, 407, 377 S.E.2d 308, 310 (1989) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* (quoting *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)).

Thompson claims the warrant issued in the present case veers from the particularity requirement in three respects. First, Thompson argues that, by permitting the search of his "person," the warrant granted law enforcement unlimited discretion to search him wherever or whenever they desired. Specifically, Thompson suggests that warrants may only authorize the search of "places" and "things," not individuals. This argument is without merit.

▆▆▆ Though not as common as warrants for the search of places, the propriety of warrants authorizing the search of persons is well settled in the law. South Carolina Code section 17–13–140, our state statute governing the issuance

and execution of search warrants, clearly authorizes the search of a person. This section provides that "[t]he property described in this section, or any part thereof, may be seized from any place where such property may be located, *or from the person*, possession or control of any person who shall be found to have such property in his possession or under his control." S.C.Code Ann. 17–13–140 (2003) (emphasis added). Indeed, the United States Supreme Court has held that warrants authorizing the search of a person are constitutional provided that "a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). Thus, there is no basis to conclude the search warrant was invalid because it authorized the search of Thompsons "person."

Thompson's second and third exceptions to the particularity of the warrant concern two specific items subject to possible search and seizure under the warrant. Thompson claims the language contained in the warrant authorizing the search of any transportation that he was riding in or on and any type of luggage in his possession was not supported by probable cause. We agree.

As quoted above, Phillips affidavit stated that his belief Thompson was in possession of contraband was based on information from a confidential informant that Thompson had been seen in the past 72 hours with quantity of crack cocaine on his "person." No further information was provided in the affidavit, and Phillips testified that the only additional information he provided the magistrate was the fact that Thompson was the subject of an ongoing narcotics investigation.

There is a substantial basis to support the trial courts determination that the warrant was overbroad in its authorization to search Thompson's vehicle or luggage. The information provided to the magistrate only related to seeing crack cocaine on Thompson's *person*. There was no basis upon which the magistrate could conclude that probable cause existed to search any vehicle Thompson was traveling in or on or any luggage in Thompson's possession.

We now turn to the legal question posed as a result of the finding that the warrant was overly broad with respect to

these specific provisions concerning transportation and luggage. We do not believe this finding renders the search warrant invalid on the whole. A contrary conclusion would mean that the seizure of certain items, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other items. Though this question of law has not been directly addressed by South Carolina courts in our modern jurisprudence, we believe one of our supreme courts older precedents supports the principle of "severability." Moreover, such an approach is widely recognized in Fourth Amendment jurisprudence, in both federal and state courts. In essence, overbroad portions of a search warrant may be "severed" from the portions for which probable cause is found to exist, thus permitting the admission of evidence properly obtained.

Looking first to our states law, we do find support for the concept of severability. In *Farmer v. Sellers*, 89 S.C. 492, 72 S.E. 224 (1911), our supreme court found a warrant, which permitted a search to be conducted by day or night, was valid regardless of a statute prohibiting nighttime searches. In that case, no search was conducted at night, and the court determined "there is therefore no ground to allege that the statute was violated. If courts gave heed to such extremely technical objections, the law would indeed be weak in its struggle with crime." *Id.* at 500, 72 S.E. at 227. The supreme court in *Farmer* thus implicitly recognized the propriety of admitting items seized under valid provisions of a warrant supported by probable cause, despite the fact that the warrant at issue was improper in other respects.

Other states have applied the concept of severability under circumstances directly analogous to the present case. For example, in *People v. Mangialino*, 75 Misc.2d 698, 348 N.Y.S.2d 327 (1973), a seminal state court case addressing severability, a New York trial court reviewed the validity of a search warrant authorizing the police to search a suspects home for illegal narcotics and associated paraphernalia as well as "records, mail, correspondence and communications used in conjunction with the sale or possession of any dangerous drugs." *Id.* at 330. The court found the affidavit submitted to obtain the warrant did not establish sufficient probable cause to justify the seizure of the "records, mail, correspon-

dence and communications" listed in the warrant. Rather than suppress all of the evidence obtained under the warrant, the court elected to redact the latter phrase from the warrant, thereby preserving from suppression all evidence seized pursuant to the valid portions of the warrant. The court concluded:

> [T]here is strong and persuasive authority in other jurisdictions to permit a severance in order to save a warrant or a search. This would seem to be supported by logic as well. If there was probable cause to issue a search warrant describing particular items to be seized, and such items are found and those items alone constitute the basis of the criminal charge, there is no reason why some additional unsupported language in the search warrant, while to be avoided, should not be severable, particularly where no items seized thereunder are included as a basis for the criminal charge.

*Id.* at 337; *see also, e.g., State v. Noll,* 116 Wis.2d 443, 343 N.W.2d 391, 396 (1984) (concluding that "in cases involving search warrants which are partially but not wholly defective, those two interests are best accommodated by admitting those items seized pursuant to the valid parts of the warrant and suppressing those items seized under the invalid portion"); *Butler v. State,* 130 Ga.App. 469, 203 S.E.2d 558, 563 (1973) (holding that "[w]here a search as it was actually conducted is lawful, it is not rendered invalid merely because the warrant pursuant to which it was made was overbroad or founded upon erroneous beliefs") (internal citation omitted); *Aday v. Super. Ct. of Alameda County,* 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961) (widely acknowledged as the leading state case adopting the doctrine of severability).

We also note that many federal courts, including the Fourth Circuit Court of Appeals, have recognized and applied the theory of severability. In *United States v. Jacob,* 657 F.2d 49 (4th Cir.1981), the court examined whether items to be seized under a search warrant met the constitutional particularity requirement. The court noted that the overly broad portions of the warrant describing the items to be seized were severable from those portions that met the particularity require-

ment.[2] *Id.* at 52. Other federal circuits have also recognized and applied the severability concept. *See United States v. George,* 975 F.2d 72, 79 (2d Cir.1992) (holding that evidence seized pursuant to valid portion of a search warrant may be admissible, even if part of the warrant is severed or redacted for lack of particularity or probable cause); *LeBron v. Vitek,* 751 F.2d 311, 312 (8th Cir.1985) (holding that the valid portion of a warrant was severable from the invalid, over broad portion); *United States v. Offices Known as 50 State Distrib. Co.,* 708 F.2d 1371, 1375–76 (9th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984) (noting that "[i]f probable cause was lacking as to the search of individuals, that does not operate to render the warrant itself invalid in its entirety as a general warrant. The remedy is not a return of all items seized but selective suppression or return of the items improperly seized"); *United States v. Christine,* 687 F.2d 749, 758 (3rd Cir.1982) (holding that "[r]edaction of a warrant containing valid severable phrases or clauses is consistent with all five purposes of the warrant requirement"); *United States v. Cook,* 657 F.2d 730, 735 (5th Cir.1981) (opining that "[w]e agree with the reasoning of the . . . majority of state courts that have considered this question and hold that in the usual case the district judge should sever the infirm portion of the search warrant from so much of the warrant as passes constitutional muster").

Furthermore, review of authoritative treatises addressing this subject further indicates the concept of severability has gained broad acceptance:

> If a search warrant is issued to search a place for several items, but it is later determined that not all of those items are described with sufficient particularity or that probable cause does not exist as to all of the items described, it is often possible to sever the tainted portion of the warrant from the valid portion so that evidence found in the execution of the latter will be admissible.

2 Wayne R. LaFave et al., *Criminal Procedure* 3.4(f), at 137 (2d ed.1999); *see also* 79 C.J.S. *Searches and Seizures* 185 (Supp.2004) (commenting that "[w]here the description in a search warrant of the items to be seized is in part insufficient-

---

**2.** The court in that case, however, found the entire warrant met the particularity requirement, defeating the need for severance.

ly particular or unsupported by probable cause, the warrant may sometimes be severed so as to preserve the valid portions"); 68 Am.Jur.2d *Searches and Seizures* 168 (2000) (observing that "striking from a warrant those severable phrases and clauses that are invalid for lack of probable cause and preserving those phrases and clauses that satisfy the Fourth Amendment, is consistent with the Fourth Amendment and should be used in order to avoid unnecessary social costs").

In the case at bar, we find the invalid portions of the warrant relating to the search of Thompson's vehicle and luggage are severable from the authorization relating to the search of Thompson's person. Because the portion of the warrant allowing the search of Thompson's person remains valid, and because none of the evidence sought to be suppressed was derived from the overbroad portions of the warrant, we find Thompson's request for suppression of this evidence was properly denied.

In so holding we do not mean to suggest that invalid portions of a warrant will be treated as severable under all circumstances. We are mindful of the danger that warrants might be obtained which are essentially general in character but arguably meet the particularity requirement in certain respects. We in no manner sanction wholesale seizures pursuant to questionable police practices. Our decision today is narrowly confined to those circumstances where, as here, there exists good faith [3]—measured objectively—on the part of law enforcement and the valid portion of the warrant is amply supported by probable cause.

## II. Staleness

We next address, and reject, Thompsons claim that the information contained in the affidavit supporting the war-

---

**3.** *See United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (adopting the "good faith exception" to the exclusionary rule under which admission of evidence will not be barred where the evidence was obtained by officers who "manifest[ed] objective good faith" in relying on a search warrant issued by a detached, neutral magistrate even though the warrant was ultimately found to be invalid). This good faith exception, however, may not be employed to validate a warrant that is based on an affidavit that "does not provide the magistrate with a substantial basis for determining the existence of probable cause." *State v. Johnson,* 302 S.C. 243, 248, 395 S.E.2d 167, 170 (1990) (quoting *Leon,* 468 U.S. at 915, 104 S.Ct. 3405).

rant was stale, and therefore could not have been the basis of a finding of probable cause.

In order for an affidavit to support probable cause, "it must state facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time." *State v. Winborne*, 273 S.C. 62, 64, 254 S.E.2d 297, 298 (1979) (internal quotation marks omitted). "An affidavit which fails altogether to state the time of the occurrence of the facts alleged is insufficient." *Id.*

There is, however, no fixed standard or formula establishing a maximum allowable interval between the date of events recited in an affidavit and the date of a search warrant. *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir.1984). This court has explained that the acceptable length of time between the establishment of probable cause and the execution of the warrant depends on a variety of case-specific factors:

> While the lapse of time involved is an important consideration and may in some cases be controlling, it is not necessarily so. There are other factors to be considered, including the nature of the criminal activity involved, and the kind of property for which authority to search is sought.

*State v. Corns*, 310 S.C. 546, 550–51, 426 S.E.2d 324, 326 (Ct.App.1992) (quoting *United States v. Steeves*, 525 F.2d 33 (8th Cir.1975)).

The record in this case contains ample support for the trial courts rejection of Thompsons assertion that the circumstances providing probable cause for the search had grown stale by the time the warrant was executed. The affidavit provides that the informant had observed Thompson in possession of crack cocaine within the past 72 hours. The affidavit was sworn on the same day the magistrate issued the warrant, and Officer Phillips executed the warrant the day after it was issued. Additionally, the record reveals that the information received from the informant was not an isolated incident. Phillips testified that he informed the magistrate that Thompson was the subject of an ongoing narcotics investigation conducted during the several months prior to obtaining the warrant.

Given the continuous nature of the alleged drug activity, we find the record supports the trial courts finding that it was reasonable for the magistrate to conclude that Thompson would be found in possession of illegal substances. Although isolated sales of narcotics unquestionably occur, it is generally recognized that "narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir.1990) (quotation marks and citation omitted); *see also Donaldson v. State,* 46 Md.App. 521, 420 A.2d 281, 286 (1980) (noting that the selling of drugs, by its nature, is an ongoing activity). Considering the informants report of Thompsons drug possession together with Phillips testimony that Thompson was the subject of an ongoing narcotics investigation did not suggest an isolated incident, but rather described a probable continuing course of illegal drug activity. We concur, therefore, with the trial court that the probable cause predicate, which supported the issuance of the warrant, continued to exist at the time of its execution.

### III. Bodily Intrusion

 Finally, we address Thompson's argument that the search warrant was invalid because it improperly authorized a bodily intrusion or a strip search. Specifically, Thompson contends the warrant's authorization to search his mouth and undergarments rendered the warrant invalid because the warrant did not set forth specific findings required to justify a bodily intrusion as required under *In re Snyder,* 308 S.C. 192, 417 S.E.2d 572 (1992). We disagree.

In *In re Snyder,* our supreme court held that South Carolina Code section 17–13–140 (search warrant statute) provides for the involuntary submission of nontestimonial identification evidence, and the court set forth guidelines and procedures for obtaining samples of blood and saliva, along with head and pubic hair, from unarrested suspects in criminal investigations. In the present case, the search did not authorize the collection of any bodily fluids, tissue samples, or other such physical evidence for which a bodily intrusion would be required. The warrant in this case merely authorized the search of Thompson's mouth and undergarments in connection with the search of his person for illegal drugs.

Therefore, the search of these areas did not rise to the level of the type of bodily intrusion contemplated under *In re Snyder.*

Moreover, our supreme court has held that the search of a suspect's mouth is appropriate in order to prevent a suspect's attempts to destroy evidence by swallowing it, because "he cannot consider the mouth a sacred orifice in which contraband may be irretrievably concealed from the police." *State v. Dupree,* 319 S.C. 454, 458, 462 S.E.2d 279, 282 (1995) (quoting *State v. Williams,* 16 Wash.App. 868, 560 P.2d 1160, 1162 (1977)). Therefore, the magistrate could properly conclude there was a reasonable probability that the crack cocaine may be found in Thompson's mouth as part of his person.

We also note that when the police searched Thompson's undergarments he had already been placed under arrest and taken to the police department. It is well settled that, in the case of a lawful custodial arrest, the full search of a person does not require a search warrant and is considered reasonable under the Fourth Amendment. *State v. Ferrell,* 274 S.C. 401, 409, 266 S.E.2d 869, 873 (1980). Therefore, the validity of the warrant with regard to the search of Thompsons undergarments was of no consequence because the search conducted was a valid search incident to arrest.

## CONCLUSION

We find that: (1) although portions of the search warrant issued were overbroad in certain respects, this fact does not render the warrant wholly invalid; (2) the search warrant was issued and executed in a timely manner; and (3) the warrant did not authorize an unreasonable bodily intrusion. Therefore, the trial court's denial of Thompson's motion to suppress the drug evidence is

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.