**Lewis D. GOLDSMITH, Petitioner–Appellant,**

v.

**S.R. WITKOWSKI, Warden; State of South Carolina; Attorney General of South Carolina, Respondents–Appellees.**

No. 91–7578.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1992.

Decided Nov. 24, 1992.

As Amended Jan. 5, 1993.

---

Steven H. Goldblatt, Director, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., argued (Eric J. Glassman, Student Counsel, Philip W. Owens, Student Counsel, on brief), for petitioner-appellant.

Donald John Zelenka, Chief Deputy Atty. Gen., Columbia, S.C., argued (T. Travis Medlock, Atty. Gen., on brief), for respondents-appellees.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and SPROUSE, Senior Circuit Judge.

## OPINION

SPROUSE, Senior Circuit Judge:

Lewis D. Goldsmith appeals from the district court's dismissal of his 28 U.S.C. § 2254 petition for habeas corpus. In the district court, Goldsmith challenged convictions by a South Carolina state court for possession of narcotics with intent to distribute and conspiracy to distribute narcotics. We hold that the evidence was constitutionally insufficient to support the convictions, and that part of the State's evidence presented at trial violated Goldsmith's Sixth Amendment right to confront witnesses. Accordingly, we reverse.

Police in Greenville County, South Carolina, arrested Goldsmith and co-defendants Timmy Cooper and Adele Jordan on drug charges in 1988. Goldsmith was indicted on six counts and was tried separately from his co-defendants; a state court jury found him guilty on all charges. He received concurrent sentences of four years for possession of marijuana, twenty years and a $20,000 fine for possession of marijuana with intent to distribute, ten years for conspiracy to distribute marijuana, four years for possession of cocaine,

twenty years and a $50,000 fine for possession of cocaine with intent to distribute, and ten years for conspiracy to distribute cocaine. On appeal the South Carolina Supreme Court affirmed the convictions for possession with intent to distribute and conspiracy to distribute marijuana and cocaine, but vacated the two simple possession convictions as lesser included offenses. 301 S.C. 463, 392 S.E.2d 787. Goldsmith's petition for habeas corpus relief in the district court challenged the remaining four convictions. He contended that, under the standard of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the evidence presented at trial was insufficient to sustain the convictions, and that the elicitation of hearsay testimony from a police officer violated his Sixth Amendment right to confront witnesses. The district court dismissed his petition, and he appeals.

## I

■ To assess Goldsmith's challenge, we review the evidence produced at trial "in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The trial evidence consisted of both physical evidence and uncontested testimony from the five police officers who searched the apartment where Goldsmith was arrested. It demonstrated that on July 22, 1988, five narcotics deputies of the Greenville County Sheriff's Department searched an apartment in Taylors, South Carolina. The officers made the search pursuant to a valid warrant. Two officers approached the apartment building from the front and three from the rear. The former testified that Goldsmith's co-defendant Timmy Cooper was outside when they arrived. Upon seeing the police, Cooper ran into the apartment through the front door. The three officers assigned to the rear of the building entered the apartment through the back door after overcoming Cooper's attempt to bar their entry.

The first officer into the apartment testified that as he entered, Goldsmith was sitting at a dining room table. A small child was sitting on a sofa. The second officer into the apartment testified that as he entered, Goldsmith was standing next to the table and was "looking toward us to see what was going on as I went through the door." They subsequently arrested Goldsmith, Cooper, and Jordan. A body search pursuant to Goldsmith's arrest uncovered $200 in his sock. No drugs were found on his person.

Both narcotics and drug paraphernalia were seized. From the dining room table, the officers seized a tenth of a gram of cocaine (1.54 grains), a scale, a straw, and rolling papers. Two bags of marijuana were recovered near one of the table legs. The larger of the two bags was concealed in a shopping bag and contained 310.92 grams of marijuana; the smaller bag contained 113.4 grams. More evidence was found in a closed kitchen cabinet, the freezer, and the master bedroom. Officers seized cocaine wrapped in aluminum foil, a bag containing cocaine, a scale, a revolver, a covered plastic coffee cup containing marijuana seeds, a small bag of marijuana, and a lunch box containing plastic sandwich bags with the corners cut out.

Both the cocaine and the marijuana were in Goldsmith's plain view. The officers testified that the one-tenth of a gram of cocaine on the dining room table was in Goldsmith's plain sight as the search began. One testified that the larger bag of marijuana was in a shopping bag on the floor, but that Goldsmith could not have avoided seeing the smaller bag from where he was standing.[1]

At trial, the officers testified that the apartment was not Goldsmith's residence; they did not identify who owned or rented the apartment. None of the officers could say that at the time they arrived at the apartment building Goldsmith was in the apartment. One testified, "I presume he was inside, we didn't see him outside."

---

**1.** Another officer testified that both bags of marijuana were in the shopping bag on the floor and were therefore not in plain view, although they were within Goldsmith's reach. Because

*Jackson* requires us to review the evidence in the light most favorable to the prosecution, we accept the testimony that the smaller bag of marijuana was in Goldsmith's plain view.

Another, when asked who was in the residence when the police arrived, answered, "I can't say, I mean, when I got there."

## A

Looking first at the evidence to determine if it is sufficient to uphold Goldsmith's two convictions for possession with intent to distribute cocaine and marijuana, we view it "in the light most favorable to the prosecution," and consider whether "*any* rational trier of fact could have found the essential elements of that crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

Under South Carolina law, a conviction for the crime of possession with the intent to distribute, of course, requires proof of possession of drugs, and either actual or constructive possession is sufficient. S.C.Code Ann. § 44–53–370(a)(1); *State v. Ellis*, 263 S.C. 12, 207 S.E.2d 408, 413 (1974). Because Goldsmith did not have actual possession of the drugs in the apartment, proof of his constructive possession was required. A person has constructive possession of drugs if he has knowledge of the presence of the drugs *and* dominion and control, or the right to exercise dominion and control, over the drugs. *Ellis*, 207 S.E.2d at 413; *see also State v. Kimbrell*, 294 S.C. 51, 362 S.E.2d 630, 631 (1987) (holding that the possession element of the crime of trafficking in cocaine requires proof of power and intent to control). Constructive possession may be established by circumstantial evidence. *Ellis*, 207 S.E.2d at 413.

The South Carolina Supreme Court, in concluding that the convictions for possession with intent to distribute narcotics were sufficiently supported by the evidence, considered Goldsmith's presence in the apartment and his proximity to the narcotics and drug paraphernalia, which he could plainly see. Under South Carolina law, a jury may properly infer knowledge from such circumstances. *See State v. Foster*, 269 S.C. 373, 237 S.E.2d 589, 593 (1977). The state courts in this case, however, did not point to any evidence from which a jury could infer dominion or control. Nor do we find such requisite record evidence of that element of the state offense as would meet the *Jackson* standard.[2]

Essentially, the government only proved Goldsmith's presence in the apartment and his awareness of the drugs. Under South Carolina law, the mere presence of a person in an area containing drugs, absent evidence of his dominion and control over them, is insufficient to prove his possession of the drugs. *State v. Tabory*, 260 S.C. 355, 196 S.E.2d 111, 113 (1973). Again, even presence coupled with knowledge of the drugs is insufficient to sustain a possession conviction; the State must also prove dominion and control. *See Kimbrell*, 362 S.E.2d at 631. Even if this were not state law, the due process protections of *Jackson*, in our view, would require the invalidation of convictions based solely on evidence of mere presence, as was established in this case.

Proof of dominion and control, of course, may include evidence that the accused controlled the premises where the drugs were found or that he had a special relationship with the owner or lessor of the premises. *See State v. Brown*, 267 S.C. 311, 227 S.E.2d 674, 676 (1976) (reversing possession conviction for insufficient evidence where defendant was a passenger in a car containing eight pounds of marijuana, but where State did not show that defen-

---

**2.** It is true that possession of more than twenty-eight grams of marijuana or ten grains of cocaine establishes a prima facie case of intent to distribute. S.C.Code Ann. § 44–53–370(d)(3). The quantity of marijuana present in the apartment more than satisfied this threshold requirement. Although the amount of cocaine recovered was less than the statutory minimum for establishing a prima facie case of intent to distribute, the jury could well have relied on Gold-

smith's putative possession of the drug paraphernalia to infer that he had an intent to distribute cocaine. *See State v. Adams*, 291 S.C. 132, 352 S.E.2d 483, 485 (1987). Missing from the necessary and cumulative structure of proof, however, was the initial requirement for the proof of possession. Proof of possession, in turn, was dependent on proof of Goldsmith's dominion and control over the drugs or drug paraphernalia.

dant had special relation with car's owner or its driver or that defendant exercised control over the car); *cf. State v. Hudson,* 277 S.C. 200, 284 S.E.2d 773, 775 (1981) (holding that evidence of heroin, seized from apartment shared by the defendants, was sufficient to show control and possession). The South Carolina courts have also accepted other proof of dominion and control as sufficient to support a finding of possession. *See State v. Ellis,* 263 S.C. 12, 207 S.E.2d 408, 413 (1974) (reversing possession conviction where appellant resided in apartment in which heroin sales occurred and was present during sales, but where State did not show that appellant participated in the sales or in any other way exercised control); *cf. Kimbrell,* 362 S.E.2d at 631 (holding that evidence, which showed accomplice told defendant to watch cocaine while former went outside, was sufficient to support possession conviction). We have no doubt that such holdings comport with the *Jackson* standard.

In this case, however, the prosecution presented only an evidentiary picture of an accused sitting at a table laden with narcotics and narcotic paraphernalia in an apartment where other drugs and paraphernalia were later discovered. The State did not identify the lessor or the lessee of the apartment. It did not identify the small child who was in the apartment, or the relationship between the child and any of the defendants. Further, the State failed to establish any connection among Goldsmith and his two co-defendants, or between the co-defendants. At best, the State's evidence showed Goldsmith's presence in an unknown person's apartment and his knowledge of drugs and drug paraphernalia in the apartment.

It is true that Goldsmith was alone in the apartment, except for the presence of the small child, at the time of the officers' entry. No witness was able to say, however, who was in the apartment before the police entered or why Goldsmith was there. One officer testified that he only "presumed" that Goldsmith was inside before

they entered, and another, when asked who was inside before the search began, responded, "I can't say." There was no evidence that all the entrances of the apartment building were under observation. Both Cooper and Jordan were close to the building, and Goldsmith may have been waiting for either co-defendant, or both, to return from outside. The record evidence does not indicate whether Goldsmith had been at the apartment on previous occasions or how he came to be there when he was arrested.[3] Moreover, Goldsmith did not attempt to hide or dispose of the drugs or to evade the police. The trial evidence simply did not demonstrate that Goldsmith was "alone" in a sense that would have allowed the jury to infer that he had the right to exercise dominion and control over the apartment or the contents of the apartment.

Because the trial evidence was constitutionally insufficient to support a finding that Goldsmith had dominion and control over the marijuana or the cocaine, we find that there was insufficient evidence to find that he had possession of either drug. Therefore, we reverse the two convictions for possession with intent to distribute.

B

▮▮▮ Likewise, after viewing the evidence "in the light most favorable to the prosecution," we find the evidence insufficient to support the conspiracy convictions. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

▮▮▮ Conspiracy is defined under South Carolina law as "a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object or an object neither criminal nor unlawful by criminal or unlawful means." S.C.Code Ann. § 16-17-410. In order to convict a person of conspiracy, the State must first show the existence of a conspiracy. *State v. Hiott,* 276 S.C. 72, 276 S.E.2d 163, 166 (1981). The Supreme Court of South Carolina has held "that a formal

---

**3.** One officer testified that the police "had information that Mr. Goldsmith and Mr. Cooper would be present at the time" of the search, but

the jury was properly told to disregard the statement. *See* discussion *infra* part II.

express agreement is not necessary to establish the conspiracy, and that it may be shown by circumstantial evidence and the conduct of the parties." *State v. Oliver*, 275 S.C. 79, 267 S.E.2d 529, 530 (1980). After the prosecution establishes the existence of a conspiracy, it need prove only a slight connection between the conspiracy and the defendant to convict him of knowing participation in the conspiracy. *State v. Sullivan*, 277 S.C. 35, 282 S.E.2d 838, 843 (1981) (quoting *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir.1977)).

The State here, however, presented no evidence, even circumstantial, to show the existence of a conspiracy. Even had there been one, there was no evidence to show Goldsmith's participation. It is true, as previously noted, that the jury could have inferred Goldsmith's knowledge of the drugs. A reasonable juror could have believed Goldsmith was a user waiting to make a purchase, a friend of the owner or lessee of the apartment, or perhaps even an interloper. A conclusion, however, that Goldsmith was part of a conspiracy to distribute marijuana or cocaine, requires bridging an evidentiary gap with rank speculation.

## II

■ Goldsmith also asserted in his petition that his Sixth Amendment right to confront witnesses was violated when the State introduced hearsay evidence, and that the trial court erred in denying defendant's motion for a mistrial. Goldsmith complains that the entire trial was tainted when the state prosecutor asked a deputy, "[W]hy did y'all serve the search warrant that day?" and the officer responded, "We had information that Mr. Goldsmith and Mr. Cooper would be present at the time." Although the trial court sustained defense counsel's objection and instructed the jury to disregard the answer, Goldsmith contends that the officer's statement "left an indelible impression fixed in the jurors' minds that this could not be a case of mere

presence because the police had additional evidence tying Goldsmith to the apartment, to Cooper, and to an ongoing drug conspiracy."

■ We agree with the South Carolina Supreme Court that the blatant attempt by the prosecutor to strengthen an obviously weak case was an egregious constitutional error. We disagree, however, with its conclusion that the error was harmless.[4]

■ The presumption of cure by a court's instruction is overcome when there is an " 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987) (quoting *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987); *Bruton v. United States*, 391 U.S. 123, 136, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968)). Here the officer's answer was devastating to the defense. By telling the jury that the police knew Goldsmith would be at the apartment at a specific time, it supplied a missing link in the State's case. The jurors could then believe that Goldsmith was personally known to the police and was known to be connected with the apartment and the drug operation inside. The statement linked Goldsmith to Cooper, and intimated that the two somehow operated out of the apartment together. There was no longer the possibility that Goldsmith was an innocent visitor or a user waiting to make a purchase; he was the identified target of a police investigation and a confederate of Cooper. The statement was not harmless error with regard to the conspiracy convictions. The jury could have inferred from this testimony that a conspiracy existed and that Goldsmith participated in it.

■ Nor was the statement harmless error with regard to the convictions for possession with intent to distribute narcotics. The officer's response allowed the

4. In order to show that a constitutional error was not prejudicial, the State must prove that it is harmless beyond a reasonable doubt. *See*

*Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

jury to infer that Goldsmith had a special relationship with the apartment and with Cooper, and therefore, that Goldsmith had the right to exercise dominion and control over the apartment and its contents. Evidence of dominion and control would have established the other missing link in the State's case, providing the crucial element of the offense of possession with intent to distribute narcotics. At best, the presentation of the deputy's testimony represented loose prosecution. At worst, it could be seen as an attempt to present through the back door what the State had failed, for whatever reason, to present through appropriate prosecutorial evidence.

### III

The judgment of the district court is reversed and the case remanded for entry of an order granting the writ of habeas corpus.

REVERSED AND REMANDED.

NIEMEYER, Circuit Judge, dissenting:

Lewis D. Goldsmith was convicted by a South Carolina state jury of six counts—two counts each of possession of marijuana and cocaine, possession with intent to distribute, and conspiracy to distribute. On appeal, the South Carolina Supreme Court vacated the "simple possession" convictions as lesser included offenses and affirmed the convictions on the remaining counts. On this petition for a writ of habeas corpus, Goldsmith would now have us review his convictions again, principally because, he contends, the evidence was insufficient to support the convictions. As he stated in his petition:

> The state fail to prove that the Petitioner had any knowledge of the Drugs that was found at another Persons Home, and in looking at the Evidence in light most favorable to the State, there was not evidence that would allow the State to find the Petitioner guilty beyond a reasonable doubt.

Goldsmith has also complained about the jury's possible consideration of stricken testimony that he contends was prejudicial.

Considering Goldsmith's first argument, we begin by recognizing that two state courts have reviewed Goldsmith's convictions for sufficiency of the evidence and that our role is only to assure that South Carolina complied with federal constitutional requirements when convicting Goldsmith. *See Jackson v. Virginia,* 443 U.S. 307, 322–23, 99 S.Ct. 2781, 2790–91, 61 L.Ed.2d 560 (1979). While the imposition of a sentence in the absence of substantial evidence of criminal conduct would deny Goldsmith due process, I submit that that was not the case here. We must carefully limit our review to the issue of constitutional sufficiency, scrupulously resisting any temptation to substitute our interpretation of the evidence for that of the South Carolina jury. *See Wright v. West,* — U.S. —, —, 112 S.Ct. 2482, 2492, 120 L.Ed.2d 225 (1992) ("In *Jackson,* we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.") (Thomas, J., plurality opinion).

The evidence supporting Goldsmith's conviction stems from the July 22, 1988, search of Timmy Cooper's apartment. There is no dispute that state law enforcement officers conducted that search properly. The search was pursuant to a valid warrant, and probable cause to believe illegal activities were occurring within the apartment was established by a "controlled buy" of illegal substances in the apartment earlier that day.

The only people in Cooper's apartment immediately before the search were Goldsmith and a small child. At the time of the search Goldsmith was found sitting at the kitchen table. In front of him on the table were cocaine powder, drug paraphernalia, rolling papers, and a "tube straw" (explained by the officers to be a straw that had been cut down for use in inhaling cocaine). On the floor, "right beside" the table, were two large bags of marijuana. In addition to the drugs found in front of the defendant, officers seized additional cocaine and marijuana, aluminum foil packages with cocaine in them, scales, a plastic cup with marijuana seeds, a handgun and

cash. Upon arresting Goldsmith, officers discovered he had $200 in cash hidden in his sock.

In addition to the substantial quantities of drugs and drug-related paraphernalia found, the events surrounding Goldsmith's arrest provided evidence that he was involved with Cooper. When law enforcement officers arrived before the search in the parking area at Cooper's apartment dressed in "raid jackets" which identified them as sheriff's deputies, Cooper, who was then outside, ran to the back door of the apartment and "slammed the door back on [the officer's] arm as [the officer] was trying to go in." Cooper then ran into the living room where he was restrained. A woman, possibly the mother of the small child, was outside of the apartment when the officers arrived and remained outside during the search and arrests.

The only evidence presented at trial was that of the State. But in support of his petition for a writ of habeas corpus Goldsmith contended:

Petitioners Position is that on the Morning of July 22, 1988, He did stop by the Home of One Timmy Cooper, the CO–Defendant in this Case, However *to the best of His Knowledge there was no drugs found out in the Opening that he Could see*, that at the time in Question, That the Petitioner was on Parole and that He had called over to the CO–Defendants Home, and made arrangements to barrow the amount of Money that was needed to make His Ends Meet....

(Emphasis added). His contention that he did not see any drugs and was not therefore involved with any drugs is directly contradicted by the testimony of the several officers, all of whom saw cocaine on the table and two large bags of marijuana on the floor.

The critical issue in this case is whether there is sufficient evidence from which a jury could infer that Goldsmith was in possession of the drugs. Even if the jury found he was in possession only of the drugs at and about the table where he was seated, it could permissibly find both possession with intent to distribute and con-

spiracy. Next to the table and clearly visible were the two bags of marijuana, the smaller of which contained 113.4 grams (several ounces). Possession of one ounce of marijuana establishes a prima facie case under South Carolina law of intent to distribute. *See* S.C.Code § 44–53–370(d)(3) (1988) (amended 1990). While the amount of cocaine on the table at which Goldsmith was seated, .1 gram (1.54 grains), was not by itself sufficient to establish a prima facie case of intent to distribute, *see* S.C.Code § 44–53–370(d)(3) (possession of ten grains of cocaine establishes a prima facie case of intent to distribute), when drug paraphernalia are present, no particular amount of cocaine is necessary to support a finding of intent to distribute. *See State v. Adams*, 291 S.C. 132, 352 S.E.2d 483, 485 (1987). In this case, in addition to the drug paraphernalia on the table in front of Goldsmith, scales, packaging, and more cocaine were seized from the apartment. Evidence was also admitted that showed that the officers had made a controlled buy from the apartment earlier.

To find a conspiracy, a jury need not find an explicit agreement, but may infer an agreement from circumstantial evidence and the parties' conduct. *See State v. Oliver*, 275 S.C. 79, 267 S.E.2d 529, 530 (1980). The jury could have properly concluded that Cooper was involved in the drug operation, a finding necessary to support a conspiracy conviction. When Cooper recognized that law enforcement officials had arrived at the scene, he ran to the apartment in an effort to exclude them and thereby protect the drug activity inside. From all the circumstantial evidence, a rational jury could, and did, conclude that Goldsmith was involved in a conspiracy.

A finding of possession by Goldsmith therefore remains the crucial element. To establish possession under South Carolina law, the State must show both the power to control the drugs and the intent to control their disposition or use. In this case both may be inferred from the presence of drugs in front of Goldsmith on a table at which only he was sitting. "Because actual knowledge of the presence of a drug is

strong evidence of intent to control its disposition or use, knowledge may be equated with or substituted for the intent element. Possession may be inferred from the circumstances." *State v. Kimbrell*, 294 S.C. 51, 362 S.E.2d 630, 631 (1987) (citation omitted). Viewed in a light most favorable to the State, the evidence properly admitted in this case permits the jury to infer that Goldsmith, the only adult in the apartment, was in possession of at least the drugs at the table, if not all the drugs found throughout the apartment.

Rejecting the permissible inferences, the majority opinion has, in my judgment, failed to take the evidence in a light most favorable to the State and has concluded that, "because the trial evidence was constitutionally insufficient to support a finding that Goldsmith had dominion and control over the marijuana or the cocaine" the convictions must be reversed. I respectfully disagree.

Goldsmith's second argument is that the failure of the judge to order a mistrial in addition to striking the hearsay testimony violated his Sixth Amendment rights. The trial court sustained defendant's objection to the questionable evidence and curatively instructed the jury. In considering the effect of evidence improperly introduced, we must look at it in context. In this case, the stricken evidence would have added little to the State's case. Because the evidence was otherwise adequate to support a conviction, I would conclude that the evidence improperly introduced—a single question and answer promptly followed by an objection and a curative instruction—did not deny Goldsmith due process. *See Greer v. Miller*, 483 U.S. 756, 766, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987).

While the case presented against Goldsmith was not an overwhelming one, it was supported by sufficient evidence and did not violate his constitutional rights. I fear that in this case the Court has been led not to a constitutional review under the Fourteenth Amendment, but to a garden variety appellate review of the same issues raised before, and properly disposed of by, the South Carolina Supreme Court. *See State*

*v. Goldsmith*, 301 S.C. 463, 392 S.E.2d 787 (1990).

Because I would affirm the district court's denial of the writ, I respectfully dissent.