**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-4666**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GREGORY L. BILLUPS,

Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Richard L. Williams, Senior District Judge.  (3:05-cr-00042-RLW)

---

Submitted:  February 22, 2007          Decided:  March 16, 2007

---

Before WILKINSON, KING, and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

John B. Mann, Richmond, Virginia, for Appellant.  Chuck Rosenberg, United States Attorney, Michael C. Wallace, Sr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gregory L. Billups seeks appellate relief from his convictions by a jury in the Eastern District of Virginia on three drug and firearms related offenses:  possession with intent to distribute cocaine base ("Count One"), in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime ("Count Three"), in contravention of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon ("Count Four"), in violation of 18 U.S.C. § 922(g).  Billups maintains on appeal that the evidence before the jury was not sufficient to warrant his convictions, and that the district court denied him a fair trial by committing multiple errors in the conduct of his trial.  As explained below, we affirm.

I.

In the early morning hours of December 6, 2004, police officers in Richmond, Virginia, responded to a report that gunshots had been fired in the vicinity of Apartment No. 6 at 5300 Hull Street, and that someone may have been shot.[1]  The police were advised that a bald black male, wearing blue jeans, a white T-shirt, and a fur coat, was involved in the shooting incident.  When

---

[1]The factual predicate for Billups's convictions is drawn from the trial record, and is spelled out in the light most favorable to the prosecution.  See United States v. Pasquantino, 336 F.3d 321, 332 (4th Cir. 2003) (en banc).

the police arrived at the scene, they discovered a multiple-building apartment complex, called Pine Brook Village Apartments, located in the 5300 block of Hull Street, but did not locate an actual 5300 building. As a result, four police officers split up to check each "Apartment No. 6" in the Pine Brook complex. Officers Hatchett and Urban checked on Apartment No. 6 in building 5312 and were informed by a neighbor that it was vacant.[2] The officers noticed, however, that the door to this Apartment No. 6 was ajar by two to three feet, and that it appeared to have been forcibly opened. Looking into the apartment, they observed a bald black male, later identified as defendant Billups, wearing a T-shirt and appearing to be asleep on the sofa. The officers called out to Billups to ensure that he was not hurt and received no response. They entered the apartment, and noticed that it was partially furnished and that clothes were strewn on the floor. Billups then awoke, and Officer Urban observed him slide his foot (apparently in a deliberate manner) over what looked to be a bag of crack cocaine.

The officers asked Billups for identification, which revealed that his address was on Wentbridge Road in Richmond. After running a records check, they discovered an outstanding warrant for Billups, and he was arrested, searched, and taken into custody on

---

[2]As used hereinafter, "Apartment No. 6" refers to the apartment in the 5312 building of the Pine Brook Village Apartments where Billups was found and arrested.

the warrant. After securing Billups, the officers recovered the item he had covered with his foot, which was later confirmed to be .11 grams of cocaine base, more commonly known as crack cocaine. The officers found $1,840 in cash in Billups's pockets.[3]

The officers proceeded to search Apartment No. 6, and Officer Hatchett discovered, in the apartment's kitchen, a loaded 9mm semiautomatic pistol, a cell phone, measuring scales, a used crack pipe, and an unopened box of sandwich baggies. These items were located in a single-shelf, double-door cabinet over the kitchen sink, directly above an opening that looked into the living room where Billups had been sleeping. The firearm and cell phone were immediately beside one another at eye level in the cabinet, and the scales and sandwich baggies were within a foot of them. Officer Hatchett, while looking into the living room through the opening over the kitchen sink, asked Billups if the cell phone belonged to him, and Billups acknowledged that it was his. Before being removed from Apartment No. 6, Billups requested that the officers retrieve his fur coat from an apartment closet. The officers failed to locate any other contraband or persons in the apartment.

On October 24, 2004, six weeks before Billups's arrest, the Richmond police had executed a drug-related search warrant at

---

[3]At trial, defense witness Tanya Ward provided an explanation for Billups's possession of the cash. She testified that she lived with Billups on Burtwood Lane in Richmond and that, just before his arrest, she had given him $1,800 in cash to make a mortgage payment. This evidence was apparently not credited by the jury.

Apartment No. 6. At that time, it was occupied by Rashia Blackwell, and the officers seized firearms, cocaine, and marijuana. That search also led to the discovery of sandwich baggies and what appeared to be cocaine in a kitchen cabinet. At Billups's trial, Blackwell testified that she did not know him, but that she had seen him at a friend's house. Blackwell testified that she had lived in Apartment No. 6 for two years and vacated it in early November of 2004. Prior to vacating Apartment No. 6, she gave most of her furnishings to friends and neighbors.

Georgette Kirvin, the property manager of the Pine Brook complex, testified that Blackwell had turned in her key to Apartment No. 6 on December 1, 2004.[4] When Kirvin walked through the apartment that day, she observed furniture, clothing, pots, pans, dishes, and other items, and it appeared that Blackwell had moved in a hurry. Kirvin testified that, at the time of her walk-through, the lock on the front door was broken and she left it unrepaired. She did not recognize Billups and had never seen him at Pine Brook.

On January 19, 2005, the grand jury indicted Billups, and he was tried on January 20, 2006. At trial, the Government called DEA Agent John Scherbenske as an expert witness in drug trafficking. Scherbenske testified that the totality of the evidence found in

_____

[4]Georgette Kirvin was not available to testify at Billups's trial, but her testimony from a pretrial hearing was read to the jury without objection.

Apartment No. 6 on the occasion of Billups's arrest was consistent with an intent to distribute drugs. On cross-examination, Billups's lawyer sought to ask Scherbenske about the significance of the scales and baggies to his opinion that Billups had intended to distribute cocaine base. Sustaining the prosecution's objection, the court ruled the question speculative and hypothetical.[5] When Billups's lawyer clarified his question, Scherbenske responded that the baggies in themselves do not indicate distribution of drugs, in that the baggies have legal purposes. Billups's lawyer then asked about the cocaine base seized from under Billups's foot when he was arrested, and its proximity in the apartment to the baggies. In sustaining another objection, the court commented to the jury regarding where the cocaine base had been found and the jury's obligation to assess the significance thereof, as follows:

> The record shows that they were not in the same proximity . . . . And you all have heard where these baggies were located, allegedly under the foot of the defendant, and where the scales were and things of that nature, so you have already heard that. And it will be up to you factually to determine the significance of it.

J.A. 137. Billups's lawyer also questioned Scherbenske regarding the significance the evidence found in the kitchen cabinet may have

---

[5]Billups's question to Scherbenske was framed as follows: "[i]f the baggies, if there was no evidence baggies did not belong to Mr. Billups, or the scale, that would be an indication, one, that any drugs he even possessed were not for distribution." J.A. 136. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

had if drugs had not been found in the apartment. Before being interrupted, Scherbenske responded that, based on the time of arrest and the amount of cash Billups had in his pocket, he could be "conceived as selling throughout the evening." J.A. 140. Billups's lawyer then interrupted Scherbenske, stating that "[y]ou have no evidence." Id. In response to the interruption, the court asked the witness if "the assumption was that he sold out?" Id. Scherbenske replied, "[t]hat's correct."[6] Id.

Billups was found guilty by the jury on all four counts of the indictment. That same day, he was sentenced to 240 months in prison on Count One; 120 months on Count Four (60 months concurrent with the Count One sentence, and 60 months consecutive thereto); plus 60 months on Count Three, consecutive to the sentences imposed on Counts One and Four.[7]

---

[6]As a part of its case, the prosecution published a stipulation between the parties establishing, most notably, (1) that Billups had been previously convicted of a felony, and (2) that the substance seized from Apartment No. 6 was cocaine base. J.A. 69-72.

[7]Billups was also charged and tried for simple possession of cocaine base ("Count Two"), in violation of 21 U.S.C. § 844(a). Judgment was never entered on Count Two, however, and it was dismissed by the Judgment Order as a lesser included offense of Count One. Although the Judgment Order reflects that "FOR SENTENCING PURPOSES, COUNT TWO HAS BEEN MERGED INTO COUNT ONE," this language appears to be surplusage, in that Billups was never adjudged guilty or convicted on Count Two.

7

II.

First, in assessing a sufficiency of the evidence issue, the appropriate inquiry is whether, viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942). We "must consider circumstantial as well as direct evidence, and allow the Government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Second, we review for plain error an appellate contention not properly preserved in the trial court. United States v. Olano, 507 U.S. 725, 731-32 (1993). Under the plain error standard, a court of appeals may correct an error that is plain and that affects a defendant's substantial rights, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. at 732. On plain error review, an appellant bears the burden of persuasion with respect to prejudice. United States v. Rodriguez, 433 F.3d 411, 416 (4th Cir. 2006).

III.

On appeal, Billups makes two contentions of error. First, he asserts that there was insufficient evidence to support any of his convictions. Second, he contends that he did not receive a fair

8

trial because the district court committed multiple errors in the conduct of his trial. We address these contentions in turn.

## A.

Billups first contends that there was insufficient evidence to prove the three convictions that he has appealed. His contentions on lack of proof are, in substance, as follows: on Count One, that the prosecution failed to present sufficient evidence that Billups knowingly possessed with an intent to distribute cocaine base; on Count Three, that the prosecution failed to prove that Billups knowingly possessed a firearm in furtherance of a drug trafficking crime; and, on Count Four, that the prosecution failed to prove that Billups knowingly possessed a firearm as a convicted felon.

## 1.

Each of the three foregoing aspects of Billups's sufficiency of the evidence contention required the jury to find beyond a reasonable doubt that Billups had knowingly possessed a contraband item underlying his convictions. More specifically, Billups contends that the proof was insufficient on whether he knowingly possessed cocaine base, the firearm, or drug paraphernalia.[8]

---

[8]The phrase "drug paraphernalia," as used herein, collectively refers to the crack pipe, the scales, and the baggies seized from the kitchen cabinet of Apartment No. 6 when Billups was arrested. Although possession of these items is not an element of any of Billups's offenses of conviction, their possession is pertinent to our assessment of the proof of Counts One and Three.

9

Possession of such contraband may, of course, be either actual or constructive. United States v. Laughman, 618 F.2d 1067, 1076-77 (4th Cir. 1980). Constructive possession can be established by showing "that the defendant exercised, or had the power to exercise, dominion and control over [an] item." Id. at 1077. However, mere presence at a place where contraband is found is insufficient, in and of itself, to establish constructive possession. United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1984).

The trial evidence revealed that the cocaine base underlying Count One was found under Billups's foot next to the sofa where the officers discovered him, and that he had placed his foot on the bag of cocaine in an effort to conceal it. Under this evidence, it was entirely reasonable for the jury to conclude that Billups was attempting to conceal the contraband and that it was under his control. Second, Billups acknowledged to the officers that he owned the cell phone found in the kitchen cabinet containing the 9mm pistol and the other drug paraphernalia. Given the fact that Billups was alone in Apartment No. 6, and that his cell phone was next to the firearm and other drug paraphernalia in the kitchen cabinet, the evidence sufficiently established that he had a stake in the cabinet's contents and exercised dominion and control over it. See United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir. 1980) (explaining that proximity to contraband is not enough to

10

constitute constructive possession, but that where other circumstantial evidence is sufficiently probative, proximity to contraband coupled with inferred knowledge of its presence will support finding of guilt). Thus, there was sufficient evidence for the jury to conclude that Billups possessed the cocaine base, the firearm, and the drug paraphernalia found in Apartment No. 6 on December 6, 2004.

Billups maintains on appeal, however, that our decision in Goldsmith v. Witkowski, 981 F.2d 697, 701 (4th Cir. 1992), recognizing that "even presence coupled with knowledge . . . is insufficient to sustain a possession conviction," undermines the jury's verdict against him. In Goldsmith, the prosecution presented evidence that Goldsmith was found sitting at a table surrounded by narcotics in an unknown person's apartment. The search in Goldsmith yielded additional contraband from other areas of the house and resulted in the arrest of other persons who were present. There was no evidence that Goldsmith himself had exercised dominion and control over the narcotics or, more broadly, that he controlled the apartment where he was found. In this situation, on the other hand, Billups was the only person found in Apartment No. 6 on December 6, 2004; he actively sought to conceal the bag of cocaine base with his foot; and his cell phone was found in the kitchen cabinet next to the 9mm handgun and the other drug paraphernalia. This evidence was more than sufficient to establish

11

Billups's dominion and control over the cocaine base and the cabinet's contraband contents. Thus, there was sufficient evidence for a reasonable jury to conclude that Billups was in possession of each of the contraband items underlying his convictions.[9]

2.

On Count One, in addition to claiming that he did not possess the cocaine base, Billups contends that there was insufficient evidence to establish that he intended to distribute cocaine base. We must disagree, however, because the proof was otherwise. Under the evidence, Billups was shown to possess cocaine base, the 9mm handgun, other drug paraphernalia, and more than $1800 in cash. In light of Agent Scherbenske's testimony that these items were consistent with an intention to distribute drugs, there was sufficient evidence for a reasonable jury to conclude that Billups intended to distribute cocaine base.

3.

On Count Three, in addition to maintaining that he did not possess the 9mm handgun, Billups contends that there was insufficient evidence to prove that he possessed the firearm in furtherance of a drug trafficking crime. The 9mm handgun, however, was found in the kitchen cabinet with the other drug paraphernalia,

---

[9]On Count Four, Billups's possession of the 9mm handgun is conclusive on his insufficiency of the evidence contention, because he stipulated to the other element of that charge, that is, being a convicted felon.

and it was next to the cell phone. We have, of course, recognized that firearms, such as a semiautomatic 9mm pistol, are often used by drug traffickers to protect their businesses. See United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (recognizing potential use of 9mm semiautomatic pistol to protect drug distribution scheme through preventing robberies, ensuring collections, or providing self defense). These facts are entirely consistent with the 9mm handgun being used by Billups for protection in furtherance of the distribution of drugs. Id. (explaining that, in order to establish "furtherance," prosecution must present evidence that firearm furthered, advanced, or helped forward drug trafficking crime, which may include its use in protecting distribution scheme). Although the proof as to Count Three is arguably the weakest aspect of the prosecution's case against Billups, we are obliged to view the evidence in the light most favorable to the Government. In that light, there was sufficient evidence to submit Count Three to the jury, and a reasonable jury was entitled to conclude that the loaded 9mm semiautomatic pistol found in the kitchen cabinet was being used by Billups to further a drug trafficking crime.

B.

Billups contends that the district court made multiple errors in the conduct of his trial, which, taken cumulatively, denied him a fair trial. He asserts that the court erred in four specific

13

respects: (1) by not according him an opportunity to voir dire Agent Scherbenske prior to qualifying him as an expert; (2) by improperly limiting his cross-examination of Scherbenske; (3) by misstating relevant facts to the jury when the court sustained the prosecution's objection to his cross-examination of Scherbenske; and (4) by making improper statements before the jury regarding the trial evidence. Billups failed to object at trial on any of these points, and we thus review them for plain error only.

Billups contends that the court first erred by not permitting him to voir dire Scherbenske's qualifications before he was qualified as an expert witness. Billups provides us with no authority, however, for the proposition that a trial court's failure to accord counsel an opportunity to voir dire a proposed expert witness, in and of itself, constitutes error, plain or otherwise. Moreover, there has been no showing that Billups had any basis for challenging Scherbenske's qualifications as an expert. Absent some showing that Scherbenske was not in fact qualified, we are unable to conclude that the admission of his testimony was error, much less plain error. Cf. United States v. Nobles, 69 F.3d 172, 183 (7th Cir. 1995) (recognizing that law enforcement expert testimony regarding drug trafficking aids jury's ability to understand nature of drug trafficking crimes).

Billups next asserts that the trial court erred when it improperly limited his examination of Scherbenske regarding the

14

location of the evidence found in Apartment No. 6. We have carefully considered that contention and reject it, because the court acted within its discretion in sustaining the objection and commenting on the location of the seized evidence. See United States v. Caudle, 606 F.2d 451, 458 (4th Cir. 1979) (observing that "trial judge has broad discretion to control the scope and extent of cross-examination"). Billups further asserts, however, that in sustaining the prosecution's objection, the court made a material misstatement before the jury regarding the location of the baggies found in the kitchen cabinet. Indeed, the prosecution concedes that the court was incorrect when it indicated that the baggies were under Billups's foot. The transcript reveals, however, that the court also observed that the cocaine base and the baggies were "not in the same proximity." J.A. 137. When this colloquy is examined in the proper context, the separate locations of the cocaine base (under Billups's foot) and the baggies (in the kitchen cabinet) are clear, and any misstatement by the court in that regard does not constitute plain error. See United States v. Flores, 454 F.3d 149, 158-59 (3d Cir. 2006) (concluding that court's misstatement in instruction did not amount to plain error when viewed in context).

Finally, Billups asserts that the court erred when it commented before the jury that Scherbenske's testimony was based on the "assumption . . . that [Billups had] sold out" of drugs at the

15

time of his arrest.  Scherbenske himself, however, confirmed the court's assessment by replying "[t]hat's correct."  Thus, the court's statement was not erroneous, and not plain error.  <u>See United States v. Bates</u>, 512 F.2d 56, 58 (5th Cir. 1975) (on plain error review, assertedly prejudicial comments must be viewed in context).

Because the trial court did not plainly err in any of the instances complained of by Billups, there was also no cumulative error arising from the court's conduct of the trial, and this appellate contention must also be rejected.

IV.

Pursuant to the foregoing, we reject Billups's contentions of error and affirm his convictions on Counts One, Three, and Four.[10]

<u>AFFIRMED</u>

---

[10]We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid in the decisional process.