733 S.E.2d 611

**The STATE, Respondent,**

v.

**Ricky CHEEKS, Appellant.**

**Appellate Case No. 2010–174907.**

**No. 5042.**

Court of Appeals of South Carolina.

Heard Sept. 11, 2012.

Decided Oct. 24, 2012.

Wanda H. Carter, Deputy Chief Appellate Defender, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, all of Columbia, and Solicitor Barry Barnette, of Spartanburg, for Respondent.

HUFF, J.

Appellant, Ricky Cheeks, was tried for and convicted of possession with intent to distribute crack cocaine within one-half mile of a school, trafficking in crack cocaine of more than 400 grams, and trafficking in crack cocaine of more than 100 grams. The trial court sentenced Cheeks to concurrent terms of twenty-five years each on the two trafficking charges and ten years on the possession with intent to distribute charge. Cheeks appeals, asserting the trial court erred in (1) failing to suppress the drugs seized in a residence because the search warrant was facially invalid inasmuch as it did not include a description of the place to be searched and (2) instructing the jury that "actual knowledge of the presence of crack cocaine is strong evidence of a defendant's intent to control its disposition or use." We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On June 4, 2009, SLED agent Hanning was conducting surveillance on individuals Ricky Cheeks (Ricky), Eric Elder (Elder), and Derrick Cheeks (Derrick) at a Super 8 Motel. He observed a black, Ford Crown Victoria automobile with Elder and Ricky at the vehicle. Derrick came from the hotel to meet Ricky and Elder, at which time all three of the men left in the vehicle and drove to the home of Tracy Markley (Markley). Elder had gone to the motel in Derrick's automobile to pick up Derrick, because Derrick did not have a driver's license. Once the men arrived at Markley's, Derrick began cooking cocaine that he had brought with him to the home. Derrick instructed Ricky to go purchase a box of baking soda from Wal–Mart, and Elder drove Ricky because Ricky was unable to drive. Officers conducting surveillance on the vehicle observed Elder drive to Wal–Mart, with Ricky

riding as a passenger. At Wal–Mart, Elder went inside to purchase the baking soda. The two men then returned to Markley's house, which had been kept under surveillance. When Elder and Ricky arrived back at the house, Derrick was in the process of cooking crack.

Elder and Ricky subsequently left Markley's residence again, after Derrick told Ricky that somebody was calling and "he needed to get rid of something." Officers observed Ricky and Elder get back in the Crown Victoria and leave the residence again, and the officers then followed the vehicle, driven by Elder with Ricky riding in the front passenger seat. When the vehicle failed to come to a complete stop at a stop sign, the officers initiated a traffic stop. According to Elder, Ricky had crack cocaine in his possession when they left Markley's residence. After Elder stepped away from the driver's side of the car, and Ricky stepped away from the passenger side, a drug detection K–9 conducted a free air sniff of the vehicle and alerted at the passenger side. As Ricky was escorted to the rear of the car, in between the passenger door and the trunk area, he kept reaching for the right side of his cargo-pocket shorts. After the K–9 alerted and a search of the vehicle began, one of the officers located a bag of off-white, rock-like substance on the ground in the "exact area" between the trunk and passenger door of the car where Ricky had been previously escorted. At no point was Elder on the passenger side of the car, and other than the officers, no one besides Ricky was in the area where the substance was found on the ground. Subsequent analysis of the substance revealed it to be 111.31 grams of crack cocaine.

Officers then executed a search of Markley's residence after obtaining a search warrant. Upon entering Markley's home they encountered Derrick, who ran from the kitchen area into a bedroom, and Markley, who was sitting in a chair in the family room. They found a large amount of what appeared to be crack cocaine on the counter in the kitchen. They also found boiling water on the stove, indicating crack was possibly being cooked at that time, as well as scales, razor blades and plates used in the process of cooking crack cocaine. Officers additionally discovered in the kitchen a bottle of Inositol, commonly used as a cutting agent in powder cocaine. Analy-

sis of the substances recovered from Markley's home revealed crack cocaine with a total weight of 662.42 grams.

Ricky, who was tried along with Derrick, was convicted of trafficking in crack cocaine of more than 100 grams based on the crack found during the traffic stop, and trafficking in crack cocaine of more than 400 grams for the crack cocaine found in Markley's home. He was also convicted of possession with intent to distribute crack cocaine within one-half mile of a school, based on the location of an elementary school less than one-half mile from Markley's residence.

## ISSUES

1. Whether the drugs seized in the home should be suppressed because the search warrant, which did not give any description of the place to be searched, was facially invalid.

2. Whether it was error for the trial court to instruct the jury that actual knowledge of the presence of crack cocaine is strong evidence of a defendant's intent to control its disposition or use.

## STANDARD OF REVIEW

■■■■ "In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). When reviewing the circuit court's ruling on a motion to suppress based on the Fourth Amendment, "an appellate court must affirm if there is any evidence to support the ruling," and will reverse only when there is clear error. *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 326 (2011). The appellate court is not barred, however, from conducting its own review of the record to determine whether the trial judge's decision is supported by the evidence. *Narciso v. State*, 397 S.C. 24, 28, 723 S.E.2d 369, 371 (2012).

## LAW/ANALYSIS

### I. Search Warrant [1]

---

1. We recognize the possibility that Ricky may not have standing to challenge the search warrant in this case. However, inasmuch as the record before us and the briefs show no indication the parties or the trial court ever addressed this issue as to Ricky, because we find the

The record shows trial counsel[2] made a pretrial motion to suppress, attacking the sufficiency of the search warrant on the basis that it was deficient under state and federal law because it completely omitted a description of the place to be searched. The solicitor countered that the affidavit included a description of the premises, and the warrant and affidavit should be read together.[3] Trial counsel argued the warrant in this case was deficient pursuant to *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), and the affidavit could not be used to replace the complete omission because in order to do so, the affidavit would have to be clearly referenced and incorporated into the search warrant with words of incorporation. The trial court noted, while the warrant itself did not include a description of the place or property to be searched in the blank that was provided for that purpose, the warrant did, in the first paragraph, "refer[ ] back to the attached affidavit and state[d] that there's reasonable grounds to believe that certain property, subject to seizure [was] located on the following premises." The trial court noted the South Carolina Supreme Court case of *State v. Williams,* 297 S.C. 404, 377 S.E.2d 308 (1989) allows the warrant and affidavit to be read together to supply information upon which to base the warrant. The court further reviewed *Groh* and concluded there was no indication in the *Groh* case that the warrant referred back to the affidavit, while the warrant did refer back to the affidavit in this case. The court additionally observed, "it goes on to say now, therefore, you are hereby authorized to search the premises for the property described below and to seize the property if found," such that it again,

<hr>

trial court's ruling on the sufficiency of the search warrant is correct, we decline to address Ricky's standing to challenge the warrant.

**2.** The argument made for suppression was presented by counsel for Derrick, but was joined in by counsel for Ricky.

**3.** The warrant states, "It appearing from the attached affidavit that there are reasonable grounds to believe that certain property subject to seizure under provisions of Section 17–13140, [sic] 1976 Code of Laws of South Carolina, as amended, is located on the following premises," but fails to include any description below the notation for "DESCRIPTION OF PREMISES (PERSON, PLACE OR THING) TO BE SEARCHED." However, the affidavit provides details of the residence to be searched, including the street number and name, directions to the residence, and a description of the residence.

"referr[ed] to the entire document." Finally, the court stated, "according to this, the affidavit was attached to the search warrant when it was served." The solicitor then confirmed it was, in fact, attached. The court therefore denied the motion to suppress.

On appeal, Ricky cites *Groh* for the proposition that the Fourth Amendment requires particularity in a warrant, not a supporting document to the warrant, such that an adequate description in the supporting document will not save a warrant that is facially invalid. He also cites *United States v. Hurwitz*, 459 F.3d 463, 470–71 (4th Cir.2006) for the proposition that, even though a supporting affidavit or document may be read with the document, the warrant itself must use "appropriate words of incorporation." He contends the search warrant here is devoid of any specific description of the place to be searched, and though the trial court noted the warrant referred back to the affidavit, the description of the property on the warrant did not "specifically refer back to the description on the affidavit." He therefore contends, pursuant to *Groh*, the search warrant in this matter is facially invalid, and he should be granted a new trial for the trafficking in excess of 400 grams of crack cocaine charge and the possession with intent to distribute crack cocaine within one-half mile of a school charge, related to the search of Markley's home.

█ Both the United States Constitution and the South Carolina Constitution provide a safeguard against unlawful searches and seizures, guaranteeing "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," and avowing no warrants shall issue except upon probable cause, supported by oath or affirmation, "and particularly describing the place to be searched," as well as the persons or things to be seized. U.S. Const. amend. IV; S.C. Const. art. I, § 10.[4] Evidence that is obtained in violation of the Fourth Amendment is inadmissible in both state and federal court. *State v. Gentile*, 373 S.C. 506, 512, 646 S.E.2d 171, 174 (Ct.App.2007).

---

4. Our warrant statute also requires "a warrant identifying the property and naming or describing the person or place to be searched." S.C. Code Ann. § 17–13–140 (2003).

The specific requirement that a search warrant particularly describe the person, place, or thing to be searched is aimed at preventing general warrants—those authorizing a general, exploratory rummaging in a person's belongings. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*State v. Thompson,* 363 S.C. 192, 200, 609 S.E.2d 556, 560–61 (Ct.App.2005) (citations and quotations omitted).

In *Williams,* our supreme court specifically noted it has "held that a warrant may be read in connection with the supporting affidavit to satisfy constitutional and statutory requirements of particularity in the description of the place to be searched." *Id.* at 406, 377 S.E.2d at 309.

Ricky relies on *Groh* for the proposition that the facially invalid warrant cannot be saved by the description in the affidavit. The *Groh* case involved a search warrant which failed to identify any of the items intended to be seized pursuant to the warrant. Though the application for the warrant, which was supported by a detailed affidavit, described the contraband expected to be found, the warrant itself was less specific, it failed to identify any of the items intended to be seized, and it did not incorporate by reference the itemized list contained in the application. *Id.* at 554–55, 124 S.Ct. 1284. The United States Supreme Court found the warrant, which provided no description of the type of evidence sought, was "plainly invalid" under the Fourth Amendment. *Id.* at 557, 124 S.Ct. 1284. The court further found the fact that an application for the warrant "adequately described the 'things to be seized' [did] not save the *warrant* from its facial invalidity," as "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* (emphasis in original). However, the court refused to hold "that the Fourth Amendment prohibits a warrant from cross-referencing other documents," noting "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting

document accompanies the warrant." *Id.* at 557–58, 124 S.Ct. 1284.[5]

In *Hurwitz,* also relied upon by Ricky, the Fourth Circuit Court of Appeals determined, pursuant to Groh, "[t]he particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail." *Id.* at 470. Although the court in *Hurwitz* also acknowledged *Groh* provided that "a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity 'if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant,' " the court concluded *Groh* did not establish a two-part rule—that both words of incorporation be used AND that the incorporated document accompany the warrant. *Id.* 470–71. Rather, while recognizing a majority of sister Circuit Courts of Appeals appear to require both conditions before allowing a separate document to be read as part of the search warrant, the court nonetheless held it was sufficient in that circuit "either for the warrant to incorporate the supporting document by reference or for the supporting document to be attached to the warrant itself." *Id.* at 471. Thus, the search warrant was sufficient in that case, regardless of whether the attachment accompanied or was appended to the search warrant, because the warrant cross-referenced the attachment to a supporting affidavit. *Id.* at 471–72.

 Here, Ricky has not challenged, either at the trial level or on appeal, the trial court's determination and the solicitor's confirmation that the affidavit, which described in particularity the place to be searched, was attached to the search warrant when it was served. Thus, it is the law of the case. *See State v. Fripp,* 396 S.C. 434, 441, 721 S.E.2d 465, 468 (Ct.App.2012) (noting appellant's failure to challenge the

---

5. It should be noted that *Groh* did not involve the suppression of evidence obtained pursuant to an invalid search warrant in a criminal matter, but was a civil action raising a claim of violation of Ramirez's Fourth Amendment rights by Agent Groh. *Id.* at 555, 124 S.Ct. 1284. The court ultimately held, because Agent Groh did not have in his possession a warrant that particularly described the things he intended to seize, his action in proceeding with the search was clearly unreasonable under the Fourth Amendment. *Id.* at 563, 124 S.Ct. 1284.

trial court's ruling in the appellate brief renders the unchallenged ruling the law of the case). As noted, *Hurwitz* provided that a search warrant will be considered sufficient if it either incorporates a supporting document by reference which provides the requisite particularity, or if such supporting document is attached to the warrant itself. Here, the affidavit showing the requisite particularity was attached to the warrant. Accordingly, the supporting affidavit supplied the description of the property to be searched with sufficient particularity, the affidavit was attached to the warrant, and under *Hurwitz* and *Williams*, this was sufficient to comply with both federal and state constitutional mandates. At any rate, Ricky has failed to show the warrant was deficient in providing the appropriate words of incorporation, citing no authority for his position that the description of the property on the warrant must "specifically refer back to the description on the affidavit." Here, the warrant states as follows: *"It appearing from the attached affidavit* that there are reasonable grounds to believe that certain property subject to seizure ... is located on the following premises." (emphasis added). Thus, the warrant clearly included words of incorporation, cross-referencing the attached affidavit which described with particularity the place to be searched.

## II. Jury Charge[6]

In its instruction to the jury concerning the law regarding possession, the trial court charged the jury as follows:

Now, possession, to prove possession the State must prove, beyond a reasonable doubt, that the defendant ... in the case both had the power and the intent to control the disposition or use of the crack cocaine. Therefore, possession, under the law, can either be actual or constructive.

Now, actual possession means that the crack cocaine was in the actual physical custody of the defendant. Constructive possession means that the defendant had dominion or control or the right to exercise dominion or control over either

---

6. The State appears to contend that Ricky's statement of issue on appeal in this regard is insufficient under Rule 208(b)(1)(B), SCACR. We do not find it to run afoul of this rule.

the crack cocaine or the property on which the crack cocaine was found.

Now, mere presence at a scene where drugs are found is not enough to prove possession. Actual knowledge of the presence of the crack cocaine is strong evidence of a defendant's intent to control its disposition or use. The defendant's knowledge and possession can be inferred when a substance is found on property under the defendant's control. However, this inference is simply an evidentiary fact to be taken into consideration by you along with other evidence in this case and to be given the amount of weight you think it should have. Two or more persons may have joint possession of a drug.

Trial counsel thereafter objected to the court's language in the charge that a defendant's knowledge of the presence of crack cocaine is strong evidence of the defendant's intent to control its disposition or use. Counsel argued such a charge "takes away and nullifies the mere presence" portion of the charge, and "seems to comment on the facts and the weight." Relying on State v. Kimbrell, 294 S.C. 51, 362 S.E.2d 630 (1987) and Solomon v. State, 313 S.C. 526, 443 S.E.2d 540 (1994), the trial court found the charge was proper.

On appeal, Ricky argues Kimbrell and Solomon are distinguishable from the case at hand. He contends Kimbrell dealt with a directed verdict motion wherein our supreme court commented that actual knowledge was strong evidence of intent to control. He further maintains Solomon was a post-conviction relief (PCR) action where the issue was whether trial counsel's failure to object to a "strong evidence" charge was reasonable under prevailing professional norms. He argues, given that the supreme court in Solomon noted the instruction was based on Kimbrell, the court simply found trial counsel acted reasonably in not objecting to the charge. Under these circumstances Ricky argues, while it may have been reasonable for trial counsel not to object to the strong evidence charge, such did not "validate the underlying precedent."

Ricky contends the "strong evidence" charge here was an impermissible charge on the facts and comment on the weight of the evidence, as the trial court not only instructed the jury

to consider actual knowledge in determining if he was merely present, but also demanded the jury consider actual knowledge as strong evidence of constructive possession. Ricky further argues the "strong evidence" charge negated the mere presence charge to which he was entitled. He cites *Goldsmith v. Witkowski*, 981 F.2d 697, 701 (4th Cir.1992) for the proposition that "[t]he mere presence of a defendant in an area containing drugs, even 'coupled with knowledge of the drugs,' is insufficient to prove possession."

In *Kimbrell*, our supreme court, in finding Kimbrell was not entitled to a directed verdict on her drug trafficking charge, noted that one has possession of contraband when he has both the power and intent to control its disposition or use. *Id.* at 54, 362 S.E.2d at 631. The court then stated as follows:

> Here, the State produced evidence that Kimbrell had actual knowledge of the presence of the cocaine. Because actual knowledge of the presence of the drug is strong evidence of intent to control its disposition or use, knowledge may be equated with or substituted for the intent element. Possession may be inferred from circumstances.

*Id.* (citation omitted). Thereafter, in *Solomon*, our supreme court addressed Solomon's assertion that the PCR judge erred in its determination that trial counsel was not ineffective in failing to object to the court's charge that actual knowledge of the presence of a controlled substance is strong evidence of intent to control disposition, arguing the trial judge's use of the word "strong" amounted to a comment on the facts or an opinion on the weight of the evidence. *Id.* at 529, 443 S.E.2d at 542. Finding the trial judge's instruction was in accord with the court's previous holding in *Kimbrell*, that actual knowledge of the presence of the drug is strong evidence of intent to control its disposition or use and that knowledge may be equated with or substituted for the intent element, our supreme court concluded the PCR judge properly held that trial counsel acted reasonably in not objecting to this charge. *Id.* Accordingly, our supreme court has specifically approved this "strong evidence" jury charge in the face of an argument that such a charge is a comment on the facts and weight of the evidence. Additionally, Ricky acknowledges in his argument on appeal that such a charge is "precedent," even though he

contends a PCR determination that the charge was not unreasonable given the precedent "does not validate the underlying precedent." Yet, Ricky has not made a motion to argue against this precedent and, in any case, this court lacks the authority to rule against prior published precedent from our supreme court, but is bound by the decisions of the supreme court. *See* S.C. Const. art. V, § 9 ("The decisions of the Supreme Court shall bind the Court of Appeals as precedents.").

■ We would further find the instruction, read as a whole, did not negate the mere presence charge to which he was entitled. Importantly, in making this argument and citing to *Goldsmith*, Ricky omitted a portion of the court's statement on the matter. There, the Fourth Circuit Court of Appeals noted South Carolina law provides that a conviction for the crime of possession with the intent to distribute requires proof of possession of drugs, either actual or constructive, and the mere presence of a person in an area containing drugs, absent evidence of his dominion and control over them, is insufficient to prove his possession of the drugs. *Id.* at 701. The court went on to state, "Again, even presence coupled with knowledge of the drugs is insufficient to sustain a possession conviction; *the State must also prove dominion and control.*" *Id.* (emphasis added). Ricky failed to include this emphasized portion of the court's statement in his argument. Thus, it is clear the *Goldsmith* court simply determined that presence, coupled only with knowledge of the drugs, is insufficient to prove possession, because the State must also prove dominion and control over the drugs.

As noted above, while charging the law in regard to possession in conjunction with its charge that actual knowledge of the presence of the drug is strong evidence of a defendant's intent to control the drug's disposition, the trial court specifically charged the jury that mere presence at a scene where drugs are found is not enough to prove possession. Further, the trial court charged the jury here that in order to prove possession, the State was required to prove the defendant had the power and the intent to control the disposition or use of the drug. Accordingly, the trial court instructed the jury that more was needed to prove possession than simply presence and knowledge, but that the State was also required to prove

power and intent to control disposition of the drug. Thus, the trial court properly charged the jury on mere presence as Ricky contends he was entitled pursuant to *Goldsmith*.

Thus, considering the charge as a whole, we hold the trial court properly charged the jury on mere presence, and its charge that actual knowledge was strong evidence of a defendant's intent to control its disposition or use did not negate the mere presence charge. *See State v. Mattison*, 388 S.C. 469, 478, 697 S.E.2d 578, 583 (2010) ("A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law.").

For the foregoing reasons, Ricky's convictions are

**AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.